IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 01-N-2513 (PAC)

TERRY AKERS,

    Plaintiff,

v.

JOSEPH ORTIZ, individually and as CDOC Executive Director,
DR. DENNIS KLEINSASSER, individually and as CDOC Clinical Services Director,
DR. JOSEPH McGARRY, individually and as CDOC Chief of Medical Services,
ORVILLE NEUFELD, individually and as a CDOC Medical Officer,
DR. JOHN BLOOR, individually and as a CDOC Gastroenterologist, and
C. BATSON, individually and as a CDOC Nurse Practitioner,

    Defendants.

EXHIBIT C

---

## ORDER ACCEPTING MAGISTRATE JUDGE'S RECOMMENDATION AND DENYING PENDING MOTIONS

---

*Procedural Background*

This is one of numerous cases filed in this court in which a state prisoner suffering from a chronic liver disease known as Hepatitis C has brought a civil rights action alleging that defendants have violated the Eighth Amendment to the United States Constitution and subjected the prisoner to cruel and unusual punishment by deliberately indifferent treatment or non-treatment of the disease. The cases were pursued by each plaintiff-prisoner individually, not as a class action or any other type of suit where any plaintiff represented a person other than himself. The court consolidated all such cases into the case of *Fenner v. Ortiz*, Civil Action No. 00-N-1579. Mr. Fenner and others resolved their individual cases, but Plaintiff Terry Akers did not. Consequently, the magistrate judge vacated the order of consolidation, and this case

proceeded separately after March 25, 2003, the date of the settlement in the other theretofore consolidated cases. The magistrate judge also ordered that all further filings occur in this case (01–N–2513) because it was the only case remaining open after the settlement. The parties have followed the order inconsistently.

One of the plaintiffs named in the erstwhile consolidated cases was David K. Jenner (Civil Action No. 00–N–1965). Jenner executed the "Settlement Agreement and Release" resolving his case. As provided in that agreement, the court, on March 25, 2003, entered an order administratively closing his case for a period of one year "to be reopened by this Court only upon an appropriate motion filed by a party with a showing of good cause for reopening any claim." The stipulated order also provided for dismissal of plaintiff's case with prejudice if it were not reopened within one year. On June 27, 2003 Jenner filed (1) a Motion for Relief from Judgment and Order of Dismissal Pursuant to Fed. R. Civ. P. 60(b)(3) and (2) a Motion for Order of Civil Contempt and Sanctions Against Defendants. He also seeks costs incurred in filing the motions. The magistrate judge has filed a written recommendation that the motions be denied (hereinafter, "the Jenner Recommendation"), and that recommendation presents the first matter which the court must resolve.

After all plaintiffs except Akers settled, several prisoners who were not parties to any litigation filed motions to enforce the terms of the settlement. The magistrate judge recommended that one such motion be denied, and the court adopted the recommendation without objection of the prisoner making the motion. That recommendation, therefore, is not before the court, but two more prisoners (James Taylor and David E. Edmiston) have recently

filed similar motions. Those two motions present the second matter for the court to consider.*

Finally, in considering a motion for summary judgment filed by defendants, the magistrate judge has filed a recommendation that the motion be granted (hereinafter, "the Akers Recommendation"). The basis of the recommendation is that, while factual questions preclude summary judgment on the question of whether defendants violated Akers' constitutional rights, defendants are nevertheless entitled to qualified immunity on the ground that the constitutional right was not clearly established at the time defendants acted. Plaintiff has objected to the recommendation. While defendants obviously agree with the recommendation, they have also filed an protective objection to the magistrate judge's suggestion that there are factual questions which preclude summary judgment on the issue of whether defendants violated plaintiff's constitutional rights, lest they be deemed to have waived their objection.

## *The Jenner Recommendation*

### a. *Standard of Review*

Plaintiff does not address the question about what standard of review the court should use. Defendants maintain that the court should use a standard which is very deferential to the recommendation, inquiring whether the recommendation is "clearly erroneous or contrary to law." They rely on 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(b). (Since Rule 72[b] pertains to dispositive motions and entails a *de novo* standard of review, it appears that

---

*The court notes that, as it was finalizing its ruling on these motions, the magistrate judge filed a recommendation concerning them. Having reviewed the issues and the law, the court will proceed to rule on the pending motions itself, without considering the recommendation. Therefore, it will not await objections to the recommendation. Mr. Taylor and Mr. Edmiston cannot possibly be prejudiced by this approach, since it is the functional equivalent of *de novo* review of their objections — using the standard of review which is most favorable to them.

defendants may have mis-cited and really intend to rely on Rule 72[a].) In any event, the reliance is misplaced, because section 636(b)(1)(A), section 636(b)(1)(B), and Rule 72 all pertain only to "pretrial matter[s]," which the motions at issue — for relief from judgment and order of dismissal, for civil contempt sanctions, and for costs — are not.

The court concludes that the magistrate judge's authority concerning the motions derives from 28 U.S.C. § 636(b)(3), which says that "[a] magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." Somewhat redundantly, this court's local rules provide, "Except as restricted by these rules, magistrate judges may exercise all powers and duties authorized by federal statutes, regulations, and the Federal Rules of Civil Procedure." D.C.COLO.LCivR 72.1. Unfortunately, neither the statute nor the local rule clarify the applicable standard of review when the magistrate judge is exercising authority conferred by section 636(b)(3). The court notes that the United States Court of Appeals for the Tenth Circuit has held (in an unpublished disposition) that a magistrate judge lacks authority to enter a final order reviving a judgment and can only recommend such action to a district judge. That decision is not too helpful, however, since it relied in part upon another provision in local rule 72.1 which pertains to "post-judgment matters arising under under Fed. R. Civ. P. 69" and includes "[h]olding hearings *and making recommendations to the district judge on substantive issues* including the liability of a party under a writ of garnishment or execution." *See Sec. Investor Protection Corp. v. Institutional Sec. of Colorado, Inc.*, 37 Fed. Appx. 423, 2002 WL 1150810, at **2 (10th Cir. Apr. 18, 2001) (emphasis in original).

Since the law is unclear concerning the standard of review of a magistrate judge's ruling on a Rule 60(b) motion for relief from judgment, and since the motion here pertains to an order

-4-

of dismissal entered by this court, the court will apply the standard which creates the least procedural doubt about the validity of the ruling on the motion — a standard under which this court reviews the entire record *de novo* and does not defer to the recommendation of the magistrate judge. Similarly, since magistrate judges' authority to make a finding of civil contempt is severely cabined by section 636(e) and does not encompass this situation, the court will review that matter *de novo*. Finally, because the matter of costs turns, at least initially, on the other rulings, the court will effectively consider it *de novo* in these circumstances.

### b. *Merits*

Having reviewed Jenner's objections to the magistrate judge's recommendation, the court finds them essentially frivolous. His original claim was that defendants violated the Settlement Agreement and Release by failing to post and/or otherwise disseminate the Clinical Standards concerning Hepatitis C. Since the settlement agreement was not an order of the court, Jenner has no basis for claiming that violation of the settlement agreement warrants a contempt citation, for no order has been violated. At most, Jenner might have a theoretical claim for breach of the settlement agreement. The court will not give Jenner relief by holding proceedings to punish disobedience of a non-existent order.

Jenner's claim fares no better if it is construed liberally as one for breach of the settlement agreement, for such a claim would suffer from numerous fatal defects. First, notwithstanding Jenner's bare, vague, and conclusory claim that defendants' actions amount to fraud in the inducement, he has not alleged fraud with particularity sufficient to avoid denial of his motion, and there is nothing in the record (other than his *ipse dixit*) to suggest fraud or misleading conduct on the part of defendants. He therefore cannot avoid his contract and undo

-5-

dismissal of the case. Second, the settlement agreement did not specify a time by which defendants had to post and/or disseminate the Clinical Standards. Defendants therefore had a reasonable time to do so. The settlement agreement was entered into in March of 2003. The Clinical Standards were posted on July 2, 2003. The court is unable to conclude that this time span is unreasonable. Therefore, it does not appear that there has been a breach of contract. Third, as Jenner implicitly concedes in his objection, defendants have now posted and disseminated the standards, rendering moot any request for an injunctive or declaratory remedy, and Jenner has failed to allege how he was damaged by any delay in posting or dissemination.

Jenner also objects to the recommendation to deny costs. That objection is likewise frivolous. The court is aware of no legal basis for an award of costs allegedly incurred in filing the motions, and Jenner has cited none which is remotely applicable. Moreover, since the motion for a contempt citation and the motion to reopen the case are without merit, Jenner should not be entitled to the costs of those motions.

***The Akers Recommendation***

*a. Standard of Review*

A district court assessing a magistrate judge's findings of fact and recommendations for disposition of a motion for summary judgment must make a "de novo determination of those portions of the [recommendation] . . . to which objection is made." *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). "When conducting de novo review, the district court makes its own determinations of disputed issues and does not decide whether the magistrate's proposed findings are clearly erroneous." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989).

B. *Merits*

Plaintiff asserts several objections to the magistrate judge's recommendation that defendants are entitled to qualified immunity from suit on the ground that their conduct violated no clearly established law. Defendants agree with the result recommended by the magistrate judge — dismissal, but they object to the suggestion that disputed questions of fact preclude summary judgment on the issue of whether they subjected plaintiff to cruel and unusual punishment by their deliberate indifference to plaintiff's serious medical needs. The parties agree that defendants' entitlement to the protection of qualified immunity here requires that the court decide two questions. First, did defendants violate plaintiff's constitutional right to be free of cruel and unusual punishment by deliberate indifference to plaintiff's serious medical needs, namely, his Hepatitis C and complications of that disease? Second, was the constitutional right which defendants violated clearly established at the time they acted? The parties also appear to agree the disease constitutes a serious medical need — "one that has been diagnosed by a physician as mandating treatment." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). Thus, the question concerning the magistrate judge's recommendation is whether defendants have acted with "deliberate indifference."

> 1. *Did Defendants Violate Any Constitutional Right of Plaintiff by Deliberate Indifference to His Serious Medical Needs?*

As plaintiff observes, the Supreme Court held over twenty-five years ago, in *Estelle v. Gamble*, 429 U.S. 97 (1976), that prison officials violate the Eighth Amendment when they are "deliberately indifferent" to a prisoner's serious medical needs. *Estelle* also states, however, that not every claim of inadequate medical treatment states a constitutional violation. *Id.* at 105.

-7-

Case 1:05-cv-02533-EWN-MJW   Document 19-3   Filed 03/27/06   USDC Colorado   Page 8 of 17

Allegations of negligent diagnosis or treatment do not establish the requisite culpable state of mind. *Id.* at 105–06. The selection of diagnostic techniques and treatment are matters of medical judgment, and are at most claims of medical malpractice that do not rise to the level of constitutional violations. *Id.* at 107. A prison official acts with "deliberate indifference" only if the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

In deciding whether defendants violated plaintiff's constitutional rights, the court is met at the outset with a dispute concerning what evidence should be considered. Over defendants' objection, the magistrate judge used an affidavit submitted by Dr. Roderic Gottula to support her conclusion that factual disputes preclude summary judgment on the issue of whether defendants violated plaintiff's rights. The magistrate judge reasoned, "For purposes of this Recommendation and Rule 56's requirement that the evidence be considered in the light most favorable to the plaintiff, the Court will consider Dr. Gottula's affidavit."

In this court's view, the magistrate judge's approach is erroneous. The issue presented is a question of law — whether expert testimony is admissible when it rests on events which would allegedly be barred by the statute of limitations and could thus not be the basis for imposition of liability. While Rule 56 requires here that the court consider the facts and reasonable inferences therefrom in a light most favorable to plaintiff, it does not require the court to use a similar procedural prism in considering questions of law, such as whether proposed testimony is admissible. *See* Fed. R. Civ. P. 56(e) ("affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"). It is not possible to side-step a ruling

-8-

concerning the admissibility of Dr. Gottula's testimony.

The statute of limitations which applies in Colorado to federal civil rights claims asserted under 42 U.S.C. § 1983 is the two-year limitation period found in Colo. Rev. Stat. § 13–80–102(g) (2003). *Workman v. Jordan*, 32 F.3d 475, 482 (10th Cir. 1994). Plaintiff filed this case on December 28, 2001. Thus, a claim based on events which occurred before December 28, 1999 would be barred by the applicable statute of limitations. As plaintiff acknowledges, he was informed that he had Hepatitis C and liver problems in 1998, and he had been incarcerated since 1980. He was therefore fully aware of defendants' alleged actions and inactions and the alleged injurious outcome thereof. His claim thus accrued no later than 1998.

The court agrees with defendants that the continuing violation doctrine does not operate to save plaintiff's claims based on events which occurred before December 28, 1999. The doctrine was developed in cases arising under Title VII of the 1964 Civil Rights Act, and the Supreme Court has restricted its use even in this area of the law. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). The Tenth Circuit has refused to apply the doctrine in cases arising under 42 U.S.C. § 1981, reasoning "that because the continuing violation theory is a creature of the need to file administrative charges, and because a section 1981 claim does not require filing such charges before a judicial action may be brought, the continuing violation theory is simply not applicable." *Thomas v. Denny's, Inc.*, 300 F.3d 1506, 1514 (10th Cir. 1997). The circuit has never applied the continuing violation doctrine to cases arising under section 1983, and the logic of *Thomas* and its progeny suggests that it will not do so.

The two-year statute of limitations provides the perspective from which Dr. Gottula's affidavit and plaintiff's other evidence must be considered. Dr. Gottula's conclusion is that

defendants' "lack of providing [plaintiff] with appropriate screening and treatment . . . shows deliberate indifference to his serious medical needs." Setting to one side Dr. Gottula's dubious qualifications to opine concerning what constitutes "deliberate indifference," a legal term of art, the court notes that Dr. Gottula relies (with a single possible exception, to be discussed below) on events which occurred before December 28, 1999. Specifically, he claims that laboratory tests performed on plaintiff in 1988, 1989, and 1992 indicated abnormal liver function and that this circumstance should have triggered further evaluation and testing, which, in turn, (in Dr. Gottula's opinion) would have led to a diagnosis in the early 1990's that plaintiff had Hepatitis C. Under the protocol followed at that time, he would have been referred to the University of Colorado Health Sciences Center for further evaluation and treatment. Had he received this proper treatment, says Dr. Gottula, the treatment would have "slowed and probably eliminated" the progression of his disease before it became severe and led to cirrhosis of the liver. Dr. Gottula is clearly relying on events which occurred before December 29, 1999 as evidence supporting his assertion that defendants were deliberately indifferent, and the statute of limitations precludes imposition of liability based on those events.

The single possible exception to Dr. Gottula's reliance on events occurring before December 28, 1999 is his criticism of defendants' decision in 1999 to require that inmates undergo one year of substance abuse prevention education as a condition of treatment for Hepatitis C. Pursuant to this policy, plaintiff was offered such education in October of 1999 and commenced his education in January of 2000. By virtue of the one-year requirement, plaintiff did not commence treatment until 2001. It is possible to construe this as a claim based on events occurring after December 28, 1999, particularly since plaintiff bases his case partly on the one-

year period of delay in treatment. Neither Dr. Gottula's affidavit nor anything else in the record supports an inference that this delay evidences deliberate indifference. Defendant Dr. Joseph McGarry defends the one-year requirement as one which "was adopted due to the contraindication of the use of drugs while undergoing . . . therapy for Hepatitis C and the prevalence of drug and alcohol use and abuse among the [Colorado Department of Corrections] inmate population." He further claims that this standard was "based on existing scientific and medical research on the treatment of Hepatitis C." Even Dr. Gottula concedes that "requiring this type of education is not entirely unreasonable." The court concludes that this evidences nothing more than a difference of opinion between medical professionals, not deliberate indifference.

The court also concludes that plaintiff has not produced sufficient evidence to survive a motion for summary judgment, even if the statute of limitations were ignored in evaluating Dr. Gottula's affidavit. There is a large element of circularity and illogic in his chronology. As noted above, he is of the view that liver tests performed in 1988, 1989, and 1992 were "abnormal" (a medical conclusion with which Dr. McGarry disagrees), and he thinks that further evaluation and testing was warranted to determine if plaintiff had Hepatitis C. The court sees nothing in this recitation supporting a conclusion that any defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. At most, this is a criticism of medical providers for failing to recognize the "abnormality" that Dr. Gottula perceives in these tests, failing to order further evaluation and testing, and failing to use these tests to reach a diagnostic decision which Dr. Gottula, rather unscientifically and with the benefit of hindsight, posits as the ineluctable conclusion of further testing and evaluation. This is the

-11-

material of which a "failure to diagnose" medical malpractice case is constructed. To call this a knowing and conscious disregard of an excessive risk to plaintiff's health is to assume that defendants "knew of" and "disregarded" an "excessive risk" of the very disease that they are accused of failing to diagnose. Dr. Gottula's affidavit supports no inference of knowledge, disregard, or a risk which could be called "excessive."

The medical doctors agree that plaintiff tested positive for Hepatitis C in October of 1998. At that point defendants did know of plaintiff's disease, and the question is whether they disregarded it. The overwhelming evidence is to the contrary, because they treated it. The course of treatment is recited in a letter which Dr. McGarry wrote to the Board of Medical Examiners on January 25, 2001, and Dr. Gottula does not dispute the recitation. Dr. Gottula is critical of certain policies, such as the requirement that an inmate participate in a one-year substance abuse program as a condition of treatment, and he is dissatisfied with the delay from diagnosis until commencement of interferon therapy. He does not, however, opine that any of plaintiff's care was sub-standard, much less of such a low quality as to evidence disregard of plaintiff's serious medical needs. Dr. Gottula's main point is that the earlier failure to diagnose plaintiff's assumed condition, and the delay caused by that failure, caused cirrhosis of the liver, which could have been avoided by proper testing, evaluation, and diagnosis. Contrary to the doctor's suggestion, this simply does not rise to the level of deliberate indifference to plaintiff's serious medical needs.

*Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000), cited by the magistrate judge to support her recommended finding, is factually distinguishable. There, the Tenth Circuit reversed a grant of summary judgment to a supervisory prison guard where the guard observed the

prisoner at a time when he was very pale, sweating and had been vomiting. Because of an earlier report received from a subordinate, the supervisory guard knew that these symptoms had been going on for over an hour. Both the prisoner and his cell mate told the guard that the prisoner was, or might be, having a heart attack. The guard refused to summon help or transport the prisoner immediately to a doctor or a hospital because it was snowing outside and it would have taken time to warm up the prison van for transportation. Finally, the guard told the prisoner not to die on his shift.

    2.    *Was Any Constitutional Right Violated by Defendants "Clearly Established" When They Acted?*

Plaintiff argues that the law applicable to his case was clearly established over twenty-five years ago, when the Supreme Court held, in *Estelle*, 429 U.S. 97, that prison officials violate the Eighth Amendment when they are "deliberately indifferent" to a prisoner's serious medical needs. While *Estelle* and its progeny may stand for the general abstract proposition that prison officials violate the Eighth Amendment when they are deliberately indifferent to a prisoner's serious medical needs, the Supreme Court and the Tenth Circuit have repeatedly required more specificity. "The contours of the right must be sufficiently clear that an objectively reasonable officer would understand that what she is doing violates that right." *Roska v. Peterson*, 304 F.3d 982, 995 (10th Cir. 2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639-640 [1987]).

Plaintiff contends, in objecting to the magistrate judge's recommendation, "that, once a serious medical need is identified, and there is a treatment for that medical need[] that is accepted by the medical community[,] an inmate must be treated." This, plaintiff suggests, is "clearly established" law. He cites no support for this position, and the court is aware of none.

-13-

Moreover, if it were the standard for determining whether a right is "clearly established," plaintiff has failed to meet the standard here. As noted already, the question of what treatment is accepted by the medical community is the subject of disagreement among experts. Given the developing state of both the law and medical standards, the magistrate judge is correct in suggesting that the right to the treatment sought here was not clearly established.

*The Non-Party Motions*

James Taylor and David Edmiston have moved to enforce an alleged judgment or order entered by the court in these Hepatitis C cases. They purport to proceed under Fed. R. Civ. P. 71, which provides:

> When an *order* is made in favor of a person who is not a party to the action, that person may enforce obedience *to the order* by the same process as if a party; and, when obedience *to an order* may be lawfully enforced against a person who is not a party, that person is liable to the same process for enforcing obedience *to the order* as if a party.

(Emphasis added.) The italicized language is self-evident. It applies to court orders. There is no court order, consent decree, or similar document which could the basis for application of Rule 71, only a private settlement agreement.

The Taylor-Edmiston motions fare no better if treated as an effort by a intended third-party beneficiary to enforce the settlement contract. Section nine of the agreement, which is attached to Jenner's motion concerning the settlement, specifically states, "Except as expressly provided herein, this Agreement is not for the benefit of any person not a party hereto or specifically identified as a beneficiary herein, and is not otherwise intended to constitute a third party beneficiary contract." The only part of the agreement which could remotely be construed to benefit non-parties is the provision that revised clinical standards be posted in DOC facilities and

-14-

that an inmate diagnosed with Hepatitis C may receive copies of the standards. Neither Taylor nor Edmiston allege a violation of these provisions. Nothing in the agreement suggests that a non-party inmate can sue in this case on the ground that the clinical standards have been misapplied to him. His remedy is to file a case alleging a claim over which there is federal jurisdiction.

In accordance with these findings and conclusions, it is

**ORDERED** as follows:

1. The Jenner Recommendation (#58) is ACCEPTED. David Jenner's motion for relief from judgment and his motion for contempt and for sanctions (all filed June 27, 2003 in his formerly consolidated case) and his motion for costs (filed July 21, 2003) are DENIED.

2. The Akers Recommendation (#62) is ACCEPTED in part and REJECTED in part. Defendants motion for summary judgment (filed March 6, 2003 in the formerly consolidated case) is GRANTED. The clerk shall enter judgment in favor of defendants and against plaintiff, dismissing all of plaintiff's claims with prejudice.

3. Taylor's and Edmiston's motions (##82, 84) are DENIED. The magistrate judge's recommendation concerning the motions (#89) is effectively ACCEPTED.

4. Since it appears that the prescribed time period has passed and no good cause has been shown for reopening any of the other formerly-consolidated cases, those cases (00–N–1579, 00–N–1965, 02–N–0615, and 02–N–0897) are now dismissed with prejudice. The clerk shall file a copy of this order in all these files.

DATED this 25 day of August, 2004.

BY THE COURT:

*[signature]*

EDWARD W. NOTTINGHAM
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 01-N-2513 (PAC)

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the Order Accepting Magistrate Judge's Recommendation and Denying Pending Motions signed by Judge Edward W. Nottingham on August 25, 2004 was served on August 25, 2004 by hand-delivery, where a "D.C." box number or asterisk (*) is indicated after the recipient's name, by electronic mail to the address specified where a double asterisk (**) is indicated after the recipient's name, or otherwise by depositing it in the United States mail, postage prepaid, addressed to the recipient:

Magistrate Judge Patricia A. Coan*

Dennis W. Hartley, Esq.
1749 South 8th Street, Suite 5
Colorado Springs, CO 80906
*Attorney for Plaintiffs*

Andrew D. Ringel, Esq.
Hall & Evans, L.L.C.
**D.C. Box 5**
*Attorney for Defendants*

Attorney General's Office
Corrections Unit, Litigation Section
**D.C. Box 20**
*Attorney for Defendants*

David K. Jenner
Reg. No. 92839
Limon Correctional Facility
49030 State Highway 71
Limon, CO 80826

James Taylor
Reg. No. 00056
Limon Correctional Facility
49030 State Highway 71
Limon, CO 80826

David E. Edmiston
Reg. No. 112843
H.C.C.C.
304 Raysandoval Street
Walsenburg, CO 81089

GREGORY C. LANGHAM, CLERK

By_____
Deputy Clerk or Secretary