IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-02533-EWN-MJW

THOMAS MONTOYA,

Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS, CHAFFEE COUNTY, COLORADO,
CHAFFEE COUNTY SHERIFF TIMOTHY WALKER,
CHAFFEE COUNTY DEPUTY SHERIFF SCOTT GLENN,
DAVID PLATT,
BOARD OF COUNTY COMMISSIONERS, PARK COUNTY, COLORADO,
PARK COUNTY SHERIFF FRED WEGENER,

　　　　Defendants.

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

　　　　Defendants Board of County Commissioners of Chaffee County, Colorado, Timothy Walker, Board of County Commissioners of Park County, Colorado, and Fred Wegener, by and through counsel, Andrew D. Ringel and Edmund M. Kennedy of Hall & Evans, L.L.C., and Defendant Scott Glenn, by and through counsel, Anthony Melonakis of the Law Firm of Anthony Melonakis, pursuant to Fed. R. Civ. P. 56, hereby submit their Motion for Summary Judgment, as follows:

## INTRODUCTION

Plaintiff Thomas Montoya, formerly a correctional officer with the Colorado Department of Corrections, brings this lawsuit against numerous public officials of both Chaffee County and Park County, Colorado.  Plaintiff's Complaint asserts the following claims pursuant to 42 U.S.C.

§ 1983:   (1) violations of the Fourth, Eighth and Fourteenth Amendments for excessive force based on the Taser incident of October 16, 2003, against Defendants Board of County Commissioners of Chaffee County, Sheriff Tim Walker, and Scott Glenn; (2) violations of the Eighth Amendment for failure to provide medical care against all Defendants; (3) violations of the Eighth and Fourteenth Amendments for failure to train and supervise against Defendants Board of County Commissioners of Chaffee County and Sheriff Tim Walker; and (4) conspiracy pursuant to 42 U.S.C. § 1983 against all Defendants.   Multiple problems exist with Plaintiff's claims in this matter.   Defendants now submit this Motion for Summary Judgment, seeking dismissal of all claims against them.

## SUMMARY OF ARGUMENT

Plaintiff Thomas Montoya states no viable 42 U.S.C. § 1983 claim against any Defendant as a matter of law.   First, Plaintiff's claims concerning the Taser incident on October 16, 2003, are barred by the applicable statute of limitations.   Second, Defendants Timothy Walker and Fred Wegener are entitled to qualified immunity from the Plaintiff's § 1983 claims against them in their individual capacities, because Plaintiff cannot demonstrate either Defendant personally participated in any of the alleged violations.   Third, Defendant Glenn is entitled to qualified immunity from the Plaintiff's § 1983 claims, because Plaintiff cannot demonstrate that there was a violation of a clearly established constitutional right nor can he establish that Defendant Glenn acted with deliberate indifference.   Fourth, in regard to Defendants Board of County Commissioners of Chaffee County, Colorado, Timothy Walker, Board of County Commissioners of Park County, Colorado, and Fred Wegener, Plaintiff cannot demonstrate that any policies or procedures in place at the time of the allegations that form the basis of Plaintiff's claims violated

any of his rights.   Lastly, any claim against the Board of County Commissioners of Chaffee County, Colorado and the Board of County Commissioners of Park County are without merit since these Boards lack the power, authority, and responsibilities to be liable for any of Plaintiff's claims as a matter of law.

## STATEMENT OF UNDISPUTED FACTS[1]

1.      On October 16, 2003, David Platt, an independent contractor hired by Chaffee County Jail, held a training session, for Detention Officers, on appropriate use of a Taser.   [*See* David Platt Deposition, p. 14, ll. 9 through 12, p. 36, ll. 5 through 17, Exhibit A-1].

2.      Mr. Platt was a certified Taser instructor.   [*Id.* p. 25, ll. 8 through 10, Exhibit A-1].

3.      This training session was to include six (6) Detention Officers.   [*Id.* p. 36, ll. 2 through 7, p. 49, ll. 5 through 9, Exhibit A-1].

4.      Only five (5) Detention Officers were present at the October 16, 2003, training session.   [*Id.* p. 49, ll. 8 and 9, Exhibit A-1].

5.      Mr. Platt began the training sessions by subjecting the participants to a Taser jolt. [*Id.* p. 50, ll. 20 through 25, p. 51, ll. 1 through 23, Exhibit A-1].

6.      Being subjected to a Taser jolt is not mandatory for participation in the training session.   Such participation is voluntary.   [*Id.* p. 51, ll. 16 through 23, Exhibit A-1].

7.      Mr. Platt paired participants for the Taser jolt.   [*Id.* p. 75, ll. 15 through 17, Exhibit A-1].

_____

[1] Defendants accept the following facts as undisputed for purposes of this Motion only. Defendants specifically reserve the right to contest each and every one of these facts at any later stage of proceedings in this matter including at trial.

8.      The participants would kneel in front of an inflated air mattress and interlock their arms.  [*Id.* p. 77, ll. 11 through 13, p. 90, ll. 20 through 25, Exhibit A-1].

9.      Mr. Platt then connected one probe of the Taser to one participant and the other probe to the second participant.  [*Id.* p. 77, ll. 1 through 10, Exhibit A-1].

10.     The Taser jolt for purposes of the training session would last one to one and a half seconds, as opposed to an actual Taser jolt that lasts up to five seconds.  [*Id.* p. 80, ll. 6 through 21, Exhibit A-1].

11.     The participants would fall forward onto the inflated air mattress.  [*Id.* p. 79, ll. 12 through 25, p. 80, ll. 1 through 5, p. 90, ll. 20 through 25, Exhibit A-1].

12.     Following the Tasering of the first two pairs, Defendant Glenn was preparing to be Tased alone when Plaintiff entered the training session.  [*Id.* p. 82, ll. 16 through 23, Exhibit A-1].

13.     Plaintiff, an inmate within the Chaffee County Jail, then participated in experiencing a Taser jolt, connected with Defendant Glenn.  [*Id.* p. 90, ll. 15 through  25, p. 91, ll. 1 through 20, Exhibit A-1].

14.     Mr. Platt was never told by any Chaffee County employee, including Defendant Sheriff Walker, that an inmate could participate in any training sessions or otherwise be subjected to a Taser jolt.  [*Id.* p. 87, ll. 20 through 25, p. 88, ll. 1 through 6, Exhibit A-1].

15.     Prior to October 16, 2003, Mr. Platt had contracted with Chaffee County Jail to instruct two other training sessions on the use of a Taser gun.  [*Id.* p. 33, ll. 10 through 18, p. 35, ll. 1 through 5, Exhibit A-1].

16.     The two other training sessions at the Chaffee County Jail occurred in August and September 2003, during which Mr. Platt trained ten (10) Detention Officers.  [*Id.* p. 33, ll. 10 through 18, p. 35, ll. 1 through 5, Exhibit A-1].

17.     Mr. Platt never subjected an inmate to a Taser jolt in any previous training session at the Chaffee County Jail.  [*Id.* p. 67, ll. 23 through 25, Exhibit A-1].

18.     Sheriff Walker had no knowledge of Plaintiff's involvement in the training session.  [*See* Thomas Montoya Deposition, p. 142, ll. 8 through 25, Exhibit A-4].

19.     As a result of the incident of October 16, 2003, Defendant Glenn was suspended without pay for three days. [*See* Defendant Board of County Commissioners of Chaffee County's Objections and Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents (hereinafter referred to as "Chaffee County Responses to Interrogatories"), p. 4, Interrogatory No. 3, Exhibit A-2].

20.     Chaffee County Jail never again contracted for Mr. Platt's services following the October 16, 2003, incident.  [*See* Platt Dep. p. 97, ll. 15 through 25, p. 98, ll. 1 through 6, Exhibit A-1].

21.     In early 2004, Sheriff Walker learned Plaintiff had contacted a the Denver Post concerning the incident of October 16, 2003.  [*See* Chaffee County Responses to Interrogatories, p. 5, Interrogatory No. 6, Exhibit A-2].

22.     Based on this information, the Chaffee County Sheriff's Department arranged for Plaintiff to be transferred to the Park County Jail for the remainder of his sentence.  [*Id.*].

23.     This was done so that there could be no possibility of any retaliation against Plaintiff by anyone associated with the Chaffee County Jail as a result of his complaint.  [*Id.*].

24.     Chaffee County Jail Administrator Nick Leva contacted Park County Jail Administrator Monte Gore to request that Park County house Plaintiff for the remainder of his incarceration.   [*Id.* p. 5, Interrogatory No. 7, Exhibit A-2; *see also* Defendant Board of County Commissioners of Park County's Objections and Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents (hereinafter referred to as "Park County Responses to Interrogatories"), p. 4, Interrogatory No. 3, Exhibit A-3]

25.     Plaintiff was incarcerated at the Park County Jail from February 3, 2004, until his release on June 26, 2004.   [*See* Park County Responses to Interrogatories, p. 4, Interrogatory No. 2, Exhibit A-3].

26.     During his time at the Park County Jail, Plaintiff was classified as a protective custody inmate due to concerns for Plaintiff's safety due to the fact that he was previously a corrections officer with the Colorado Department of Corrections and the Park County Jail houses inmates of the Colorado Department of Corrections. [*Id.* p. 5, Interrogatory No. 6, Exhibit A-3].

27.     The decision to place Plaintiff in protective custody for his safety was made by Park County Jail Administrator Monte Gore in consultation with Sergeant Dan Muldoon.   [*Id.* p. 5, Interrogatory No. 7, Exhibit A-3; *see also* Montoya Dep. p. 176, ll. 9 through 19, Exhibit A-4].

28.     Defendants Sheriff Walker and Sheriff Wegener never communicated with each other concerning Plaintiff.   [*See* Park County Responses to Interrogatories, p. 5, Interrogatory No. 7, Exhibit A-3].

29.     Defendants Sheriff Wegener and Defendant Glenn never communicated with each other concerning Plaintiff.   [*Id.*].

30.     Prior to filing this action, Plaintiff indicated on several occasions that he had suffered no injuries as a result of the October 16, 2003, Taser incident.  [*See* Investigative Interview conducted by Leonard Post, on February 3, 2004, p. 4 (stating he received no injuries from the Taser incident), Exhibit A-5; *see also* Denver Post article (same), Exhibit A-6].

31.     Plaintiff never had any discussions with Defendant Glenn about his medical condition.  [Montoya Dep. p. 213, ll. 4 through 8, Exhibit A-4].

32.     Plaintiff was provided with medical care during this incarceration.  [*Id.* p. 152, ll. 13 through 19, p. 153, ll. 21 through 25, p. 154, ll. 2  through 20, Exhibit A-4].

33.     At that time, plaintiff was diagnosed with sinusitis and dental disease.  [*Id.*].

34.     Plaintiff never discussed issues concerning his medical care with Sheriff Walker.  [*Id.* p. 154, ll. 21 through 23, Exhibit A-4].

35.     Plaintiff never discussed issues concerning his medical care with any member of the Board of County Commissioners, Chaffee County, Colorado.  [*Id.* p. 154, ll. 24 and 25, p. 155, ll. 1 through 7, Exhibit A-4].

36.     Plaintiff never discussed issues concerning his conditions of confinement at Park County Jail with Sheriff Wegener.  [*Id.* p. 182, ll. 2 through 16, Exhibit A-4].

37.     Plaintiff never discussed issues concerning his conditions of confinement at Park County Jail with any member of the Board of County Commissioners, Park County, Colorado.  [*Id.* p. 182, ll. 22 through 25, p. 183, ll. 1 and 2, Exhibit A-4].

38.     Plaintiff has not endorsed any medical experts in this action.  [See Preliminary Pretrial Order, pp. 6 through 8, Docket No. 48].

## ARGUMENT

**I.  PLAINTIFF'S CLAIMS CONCERNING ANY EVENTS OCCURRING BEFORE DECEMBER 14, 2003, ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS**

On March 27, 2006, Defendants submitted a Joint Motion for Partial Dismissal of Plaintiff's Complaint, seeking dismissal of Plaintiff's first claim for relief, and all aspects of Plaintiff's remaining claims related to conduct that occurred prior to December 14, 2003, based on the applicable statute of limitations. [*See* Docket No. 19]. On April 17, 2006, Plaintiff filed a Response to Defendants Motion for Partial Dismissal. [*See* Docket No. 25]. On May 12, 2006, Defendants filed a Reply in Support of their Motion for Partial Dismissal. [*See* Docket Nos. 30 and 31]. This Motion is still pending and, to avoid duplicity, Defendants adopt and incorporate the arguments and authorities contained in those pleadings, pursuant to Federal Rules of Civil Procedure 10(c), as if fully set forth in this Motion for Summary Judgment.

In an attempt to avoid dismissal of his claims for the Taser incident of October 16, 2003, and conduct that allegedly occurred before December 14, 2003, Plaintiff argued that his claims were actionable under the continuing violation doctrine. Although Defendants submit that the continuing violation doctrine is inapplicable to this action, discovery now has been completed. There is absolutely no evidence in the record to support Plaintiff's argument that Defendants can be liable for conduct predating December 14, 2003, under the continuing violation doctrine. On summary judgment, a party who is making a claim has the burden of showing, by affidavit or otherwise, that a genuine issue of material fact remains for the fact finder to resolve. *See*, *generally*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). Because Plaintiff cannot adduce any evidence to support applying the continuing violation doctrine, even if the doctrine

was applicable to § 1983 claims, all claims for conduct predating December 14, 2003, including the claims arising out of the Taser incident on October 16, 2003, are barred by the applicable two-year statute of limitations.

## II. PLAINTIFF'S CLAIMS AGAINST THE BOARD OF COUNTY COMMISSIONERS, PARK COUNTY, COLORADO AND BOARD OF COUNTY COMMISSIONERS, CHAFFEE COUNTY, COLORADO ARE WITHOUT MERIT

Plaintiff's allegations against the Board of County Commissioners of Chaffee County, Colorado, include claims for excessive force, [*see* Plaintiff's Complaint, at 5, First Claim of Relief, Docket No. 1], and failure to train and supervise.   [*Id.* at 8, Third Claim of Relief]. Plaintiff also alleges a claim for failure to provide medical care, [*id.* at 7, Second Claim for Relief], and a claim of conspiracy against both the Board of County Commissioners of Chaffee County, Colorado and the Board of County Commissioners of Park County, Colorado.  [*Id.* at 10, Fourth Claim for Relief].   Plaintiff also brings similar claims against Sheriff Walker and Sheriff Wegener in their official capacities as those asserted against the respective counties.

An underlying constitutional violation must exist to hold a public entity liable under 42 U.S.C. § 1983.  *Butler v. City of Prairie Village*, 172 F.3d 736, 747 (10th Cir. 1999); *Wilson v. Meeks*, 89 F.3d 1247, 1255 (10th Cir. 1996).[2]  Chaffee and Park Counties cannot be held liable pursuant to 42 U.S.C. § 1983 simply because they employed a person or persons who violated a plaintiff's civil rights.   In *Monnell v. New York City Dep't of Social Services,* 436 U.S. 658 (1978), the Supreme Court explicitly rejected the notion of governmental entity liability based on either a *respondeat superior* or vicarious liability theory.   *Id.* at 694.  Instead, "[t]o establish

municipal liability, a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct and causal link between the custom or policy and the violation alleged." *Jenkins v. Wood,* 81 F.3d 988, 993 (10th Cir. 1996) (citing *City of Canton v. Harris,* 489 U.S. 378, 385 (1989)).   Subsequently, the Supreme Court described the requirements a plaintiff must meet to impose public entity liability in the following terms:   "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.   The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.   That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of County Commissioners of Bryan County v. Brown,* 117 S.Ct. 1382, 1388 (1997).

A single incident of deprivation of constitutionally protected rights cannot serve as the basis of municipal liability under §1983 unless the plaintiff alleges and proves that there was an underlying, properly adopted custom or policy of the local government by an official with final policy making authority which caused the deprivation. *City of Oklahoma City v. Tuttle,* 471 US 808, 823 (1985); *St. Louis v. Praprotnik,* 485 U.S. 112 (1988); *Pembaur v. Cincinnati,* 475 US 469, 480-481 (1984).   The "identification of policymaking officials is a question of state law." *St. Louis v. Praprotnik,* 485 U.S. at 124; *Pembaur,* 475 U.S. at 483.   Under these standards, Chaffee and Park Counties can be liable only for their official customs or policies, or for the actions of a final policymaker.   A custom is a "persistent and widespread" practice that

---

² Plaintiff's claims against Sheriff Walker and Sheriff Wegener, in their official capacities, are actually claims against Chaffee County and Park County.   *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).   As a result, municipal liability principles apply.

"constitutes the standard operating procedure of the local governmental entity." ***Jett v. Dallas Indep. Sch. Dist.***, 491 U.S. 701, 737 (1989).

Plaintiff has failed to establish that any policy or custom promoted or allowed for the use of a Taser on an inmate in a training session or promoted or allowed for the denial of medical treatment by the Board of County Commissioners of Chaffee County, Colorado and the Board of County Commissioners of Park County, Colorado or any final policymakers for either County. Plaintiff fails to demonstrate that, through its deliberate conduct, either County was the 'moving force' behind any alleged injuries.  As such, all claims against Defendants Board of County Commissioners of Chaffee County, Colorado, Sheriff Walker in his official capacity, the Board of County Commissioners of Park County, Colorado, and Sheriff Wegener in his official capacity, must be dismissed as a matter of law.

Additionally, under Colorado law sheriffs and boards of county commissioners are separate and distinct public entities.  The offices of sheriff and county commissioner are specifically created and defined by the Colorado Constitution and Colorado statutes.  Plaintiff, as an inmate of Chaffee and Park Counties, was under the control of the respective Sheriff's Offices and the Boards of County Commissioners had no control or authority over the County Jails based on the clear differentiation under Colorado law between the authority of sheriffs and boards of county commissioners.

In Colorado, counties are created by the Constitution.  *See* Colo. Const. art. XIV, § 1. Sheriffs and county commissioners are separate and distinct elected county officials.  *See* Colo. Const. art. XIV, § 6 (establishing the office of county commissioner) and Colo. Const. art XIV, § 8 (establishing other county officers including the office of Sheriff); *see also* C.R.S. § 1-4-205

(statutory authority for county commissioners) and C.R.S. § 1-4-206 (statutory authority for other county officers).  The powers of the counties of Colorado are defined by the Colorado Constitution and the Colorado General Assembly.  *See generally* C.R.S. §§ 30-1-101 *et seq.*

The office of county sheriff has proscribed duties, responsibilities, authority and liability under Colorado law.  *See* C.R.S. §§ 30-10-501 *et seq.*  Specifically, Sheriffs in Colorado have the authority and responsibility to oversee all county jails, *see* C.R.S. § 30-10-511, and to transport prisoners to correctional facilities.  *See* C.R.S. § 30-10-514.

The Colorado Court of Appeals has addressed the question of whether a board of county commissioners could be held liable for the actions of a deputy sheriff under *respondeat superior* principles.  *Tunget v. Board of County Commissioners of Delta County*, 992 P.2d 650 (Colo. App. 1999).  In *Tunget,* the plaintiffs attempted to hold the Board of County Commissioners liable for the alleged tortious behavior of a deputy sheriff arising from an automobile accident.  *Id.* at 650.  In concluding the Board of County Commissioners was not a proper defendant, the Court of Appeals reasoned:

> Under both the Colorado Constitution and applicable statutes, sheriffs and boards of county commissioners are treated as separate public entities having different powers and responsibilities.  Colo. Const. art. XIV, § 8 and 8.5, treat boards of county commissioners and sheriffs as separate entities, and various statutory provisions enumerate the respective specific responsibilities and powers of a county sheriff, a county, and a county board of commissioners.  *See* §§ 30-10-501, *et seq.,* 30-11-101, and 30-11-107, C.R.S. 1998.

> Especially pertinent here is § 30-10-506, C.R.S. 1998. . . .

> As the Supreme Court recognized in **Seeley v. Board of County Commissioners,** 791 P.2d 696 (Colo. 1990), § 30-10-506 makes sheriffs responsible for the acts of their deputies.  Also, in **Barton v. Continental Oil Co.,** 5 Colo. App. 341, 38 P. 432 (1894), a statute similar to § 30-10-506 was also interpreted as making a sheriff liable, as principal, to any person injured by the improper official actions of the sheriff's deputies.

. . .

> The sheriff, not the county or the Board, has the right to control with respect to the deputies.  For example, the General Assembly conferred upon the sheriff, not the county, the power to appoint and remove deputies, and to fix the deputies' salaries. Sections 30-2-106 and 30-10-506, C.R.S. 1998.

*Id.* at 650-51.  *See also* ***Bristol v. Board of County Com'rs of County of Clear Creek****,* 312 F.3d 1213, 1215 (10th Cir.2002) (en banc) (applying the ruling in ***Tunget*** to reject an argument that the board was the employer of a confinement officer for ADA accommodation).

In combination, these provisions of the Colorado Constitution, Colorado statutes, and precedents demonstrate unequivocally that sheriffs and boards of county commissioners are separate and distinct county officers with different power, authority, and responsibility.  A board of county commissioners cannot encroach on a sheriff's authority in the sheriff's areas of control.  ***Richart v. Board of County Commissioners of Boulder County***, 33 P.2d 971, 971-73 (Colo. 1934).  As such, Plaintiff's claims, all of which relate to his incarceration within the jails of Chaffee and Park Counties, against Defendants Board of County Commissioners, Chaffee County, Colorado, and Board of County Commissioners, Park County, Colorado, must be dismissed as a matter of law.

## III.   THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

### A.   <u>Qualified Immunity Principles</u>

Qualified immunity is an affirmative defense against claims brought pursuant to 42 U.S.C. § 1983.  ***Wilson v. Meeks****,* 52 F.3d 1547, 1552 (10th Cir. 1995); ***Quezada v. County of Bernalillo***, 944 F.2d 710, 718 (10th Cir. 1991).  Once raised, a plaintiff bears the burden of rebutting the presumption of qualified immunity.  ***Medina v. Crum,*** 252 F.3d 1124, 1129 (10th

Cir. 2001).  "The plaintiff initially bears a heavy two-part burden when the defendant pleads the defense of qualified immunity." *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996); *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).  The plaintiff must demonstrate: (1) the defendant's conduct violated the law; and (2) the law was clearly established when the alleged violation occurred.  *Camfield v. City of Oklahoma City,* 248 F.3d 1214, 1225-26 (10th Cir. 2001); *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir. 1988).  Only if the plaintiff establishes the defendant violated clearly established law, does the burden return to the defendant.  *County of Sacramento v. Lewis,* 523 U.S. 833, 841 n. 5 (1998); *Camfield,* 248 F.3d at 1225-26; *Mick,* 76 F.3d at 1134.

Applying these principles, first a plaintiff must demonstrate the individual defendant's conduct violated the law by coming forward with specific facts to establish the constitutional violation.  *Taylor v. Meacham,* 82 F.3d 1556, 1559 (10th Cir.), *cert. denied,* 117 S.Ct. 186 (1996).  "Plaintiff has the 'burden to show with particularity facts and law establishing the inference that defendant violated a constitutional right.'"  *Abeyata By & Through Martinez v. Chama Valley Ind. Sch. Dist. No. 19,* 77 F.3d 1253, 1255 (10th Cir. 1996) (quoting *Walter v. Morton,* 33 F.3d 1240, 1242 (10th Cir. 1994)).  A plaintiff suing public officials must set forth specific facts showing the personal involvement of each named individual defendant. *Green v. Branson,* 108 F.3d 1296, 1302 (10th Cir. 1997); *Mitchell v. Maynard,* 80 F.3d 1433, 1441 (10th Cir. 1996).  Conclusory, nonspecific and generalized allegations of constitutional deprivations are insufficient.  *Pride v. Does*, 997 F.2d 712, 716 (10th Cir. 1993).  The Tenth Circuit's rejection of any heightened pleading burden for qualified immunity cases is inapplicable at the summary judgment stage of proceedings. *Medina,* 252 F.3d at 1128-29.

Second, the plaintiff must also prove the relevant law was clearly established when the alleged violation occurred.   "To be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Albright*, 51 F.3d at 1535 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The right must be clearly established in a "particularized" sense.  *Anderson*, 483 U.S. at 640. The plaintiff need not establish a "precise correlation between the then-existing law and the case at hand," *Patrick v. Miller*, 953 F.2d 1240, 1249 (10th Cir. 1992), but the plaintiff must demonstrate substantial factual correspondence.  *Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir. 1990).  "In short, we require some, but not identical, correspondence between the cases cited and the factual situation in the case at hand." *Finn v. New Mexico,* 249 F.3d 1241, 1250 (10th Cir. 2001); *Horstkoetter v. Department of Public Safety,* 159 F.3d 1265, 1278 (10th Cir. 1998).  For a right to be "'particularized,' there must ordinarily be a Supreme Court or Tenth Circuit decision on point, or 'clearly established weight of authority' from other courts." *Wilson,* 52 F.3d at 1552 (quoting *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir. 1992)).  *See also Wilson v. Layne,* 526 U.S. 603, 616  (1999).

### B.     Plaintiff States No Cognizable Constitutional Violation of Either His Eighth or Fourteenth Amendment Rights

Initially, Plaintiff cannot state a separate Fourteenth Amendment substantive due process claim in addition to his Eighth Amendment claim against Defendants.  The Eighth Amendment provides the explicit constitutional textual source for constitutional claims arising in the prison context brought by incarcerated persons.  Further, under the Eighth Amendment, Plaintiff possesses insufficient evidence as a matter of law that any individual Defendant possessed any actual knowledge respecting any risk of substantial harm to Plaintiff posed by their acts or

omissions.  No facts exist that even lead to the inference that any individual Defendant possessed any potential foreknowledge that the training exercise posed any risk of substantial harm.  At least 10 other people participated in being tasered with no substantial harm coming to them. [See Platt Dep., p. 31 through 36 (discussing other participants being tased), Exhibit A-1].  There are simply no allegations that establish that any Defendant reasonably could know that the actions taken on October 16, 2003, violated Plaintiff's rights.  Absent such evidence, Plaintiff's Eighth Amendment claim fails as a matter of law.

1.  No Substantive Due Process Claim Exists for Plaintiff Because the Eighth Amendment Provides the Explicit Textual Source in the Constitution for Plaintiff's Allegations

It appears Plaintiff attempts a claim pursuant to the substantive component of the Fourteenth Amendment's Due Process Clause against all of the Defendants.  [See Plaintiff's Complaint, First Claim for Relief].  Under clear precedent from the Supreme Court and the Tenth Circuit, no separate and distinct substantive due process claim is available for the Plaintiff for any claim arising out of his incarceration.  Instead, the Eighth Amendment governs Plaintiff's 42 U.S.C. § 1983 claims because the Eighth Amendment provides the explicit textual source in the United States Constitution that governs allegations of constitutional violations brought by convicted prisoners during their incarcerations.  *See*, *e.g.*, *Collins v. Harker Heights,* 503 U.S. 115, 112 (1992) (determining that substantive due process claims should be viewed with extreme skepticism because of the pervasive difficulty in crafting concrete standards for judicial application in this area); *Moore v. City of East Cleveland,* 431 U.S. 494, 502 (1977) (recognizing that the area of substantive due process "has been at times a treacherous field for this Court"); *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (holding that in the prison context, the

substantive component of the Fourteenth Amendment's Due Process Clause provides no protection beyond that which the Eighth Amendment provides); *Graham v. Connor*, 490 U.S. 386, 394-95 (1989) (holding that excessive force claims must be advanced under either the Fourth or Eighth Amendment instead of substantive due process). As such, the Eighth Amendment provides the explicit textual source in the Constitution for Plaintiff's allegations.

2.    <u>Plaintiff States No Viable Eighth Amendment Claim Based on the Conduct of Defendants</u>

The United States Supreme Court has stated "the unnecessary and wanton infliction of pain ⋯ constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks and citation omitted). This includes a duty to protect prisoners from excessive force, *Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir.1990), and an obligation to give necessary medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

Whether a violation of the Eighth Amendment exists based on a prisoner's conditions of confinement requires an analysis of two factors. First, the deprivation alleged by the inmate must be objectively "sufficiently serious" to trigger the protection of the Eighth Amendment, which occurs when the conditions of confinement deprive the inmate of the minimal civilized measure of life's basic necessities. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Second, the prison official must also have a "sufficiently culpable state of mind" which means the official must be deliberately indifferent to a substantial risk of harm to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson*, 501 U.S. at 297. Importantly, the deliberate indifference standard requires a subjective inquiry into the individual defendant official's intent. "[A] prison official is liable only if the 'official knows of

17

and disregards an excessive risk to inmate health and safety.'   It is not enough to establish that the official should have known of the risk of harm." ***Barney,*** 143 F.3d 1299, 1310 (10th Cir. 1998).   "In other words, the official must both be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference." ***Riddle v. Mondragon,*** 83 F.3d 1197, 1204 (10th Cir. 1996).

Specifically, as to claims of "excessive force," the Tenth Circuit applies two prongs in its analysis: "(1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." ***Smith v. Cochran***, 339 F.3d 1205, 1212 (10th Cir. 2003) (quotation marks, alteration and citations omitted).   Similarly, to support a claim for failure to provide medical treatment, a plaintiff must demonstrate that defendants acted with "deliberate indifference" to plaintiff's "serious medical need." ***Estelle***, 429 U.S. at 104.   Thus a prisoner must first produce objective evidence that the deprivation was in fact 'sufficiently serious.'   ***Mata v. Saiz***, 427 F.3d 745, 751 (10th Cir. 2005). The subjective prong of the indifference test requires the deliberate indifference "culpable state of mind." ***Id.***   Finally, Plaintiff must establish any officer charged with an Eighth Amendment violation personally and directly participated in the conduct at issue.   *See* ***Grimsley v. Mackay***, 93 F.3d 676, 679 (10th Cir. 1996).

### 3.   Claims against Sheriff Walker and Sheriff Wegener

Plaintiff's allegations against Sheriff Walker are the same as those alleged against the Board of County Commissioners of Chaffee County, Colorado.   [*See* Plaintiff's Complaint, at 5, First Claim of Relief, at 7, Second Claim for Relief, at 8, Third Claim of Relief, at 10, Fourth

Claim for Relief, Docket No. 1].   The claims against Sheriff Wegener are also identical to those alleged against the Board of County Commissioners of Park County, Colorado.  [*Id.* at 7, Second Claim for Relief, at 10, Fourth Claim for Relief].   As such, the arguments pertaining to the Board of County Commissioners apply equally to the Sheriffs, in their official capacities, in so far as their role as final policymakers for the respective counties.  [*See* Section II above].

Additionally, any claims against Sheriff Walker and Sheriff Wegener in their individual capacities must be dismissed on qualified immunity grounds.   Plaintiff's claims against these Defendants are devoid of any personal participation on the part of Sheriff Walker and Sheriff Wegener in any alleged violation.  "Liability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifference" and a plaintiff "must show that an affirmative link exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise."  *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (quotations omitted).  "It is not enough to establish that the official should have known of the risk of harm."  *Barney*, 143 F.3d at 1310.   A supervisor must either participate or acquiesce in the alleged conduct to be held liable under § 1983.  *Woodward v. City of Worland*, 977 F.2d 1392, 1399-1400 (10th Cir. 1992).  Plaintiff presents no factual allegations establishing that either Sheriff participated or acquiesced in the alleged conduct that forms the basis of Plaintiff's claims.   [*See, e.g.,* Montoya Dep., p. 142, ll. 8 through 25, p. 154, ll. 21 through 23, p. 182, ll. 2 through 16, Exhibit A-4 (acknowledging that neither Sheriff personally participated in any of the alleged violations); *see also* Park County Responses to Interrogatories, p. 5, Interrogatory No. 7, Exhibit A-3 (Sheriff Walker and Sheriff Wegener never communicated with each other concerning Plaintiff)].

Further, as to the excessive force claim against Sheriff Walker, Plaintiff has provided no evidence indicating that Sheriff Walker possessed knowledge about the events that form the basis of his excessive force claim or otherwise acquiesced to Plaintiff participating in the training. [*See* Montoya Dep., p. 142, ll. 8 through 25, Exhibit A-4]. In fact, the undisputed facts establish that Sheriff Walker had no knowledge of Plaintiff's involvement in the training session until it was reported in the Denver Post and, upon learning of Plaintiff's participation in the training session, suspended Defendant Glenn for his role in the training. [*Id.*; *see also* Chaffee County Responses to Interrogatories, pp. 4-5, Interrogatory Nos. 3, 6 and 7, Exhibit A-2]. Absent knowledge of alleged unconstitutional conduct and an affirmative decision not to do anything about it, the claim of excessive force against Sheriff Walker must be dismissed.

As for Plaintiff's medical care claim against both Sheriff Walker and Sheriff Wegener, such a claim follows a similar analysis as discussed above in Section II when addressing the allegations against the Boards of County Commissioners. As discussed in Section II the procedures and policies that were in place at both jails ensure that inmates such as Plaintiff received adequate medical care. In fact, it is undisputed that neither Sheriff Walker nor Sheriff Wegener denied Plaintiff any medical care. [*See* Montoya Dep., p. 154, ll. 21 through 25, p. 182, ll. 2 through 16, Exhibit A-4]. It is further undisputed that neither personally participated in any medical treatment decision respecting Plaintiff or personally observed Plaintiff in need of any specific medical attention. [*Id.*]. Absent such personal participation, an individual defendant in a 42 U.S.C. § 1983 claim cannot be held liable. ***Camfield v. City of Oklahoma City,*** 248 F.3d 1214, 1225 (10th Cir. 2001); ***Mitchell v. Maynard,*** 80 F.3d 1433, 1441 (10th Cir. 1996). Moreover, Sheriff Walker and Sheriff Wegener, as non-medical professionals, may rely on the

judgment of health care providers since they have no medical training. *See, e.g.,* ***McCracken v. Jones,*** 562 F.2d 22, 24-25 (10th Cir. 1997), *cert. denied,* 435 U.S. 917 (1978). Accordingly, Plaintiff's failure to present any factual allegations establishing Sheriff Walker and Sheriff Wegener's personal participation in any of the alleged conduct must result in the dismissal of his claims against them in their individual capacities.

4.       Claims Against Detention Officer Scott Glenn.

For the reasons articulated in the briefs Defendants filed in support of their Partial Motion to Dismiss, Plaintiff's excessive force claim is barred by the applicable statute of limitations. The Taser incident involved a discrete act that occurred outside the statute of limitations period. Even if the events of October 16, 2003, are not barred by statute of limitations, however, Defendant Glenn submits that he is entitled to qualified immunity for the events of that date.

There is absolutely no evidence in this case that Defendant Glenn "knew of and disregarded an excessive risk to the inmate's health and safety." David Platt was hired by the sheriff's office to train sixteen detention officers. The training consisted of three classes conducted over a period of two months beginning in late August 2003. As part of his training, Mr. Platt Tased every participant at the beginning of the class to give them an idea of how a taser works. [*See* Platt Dep., p. 14, ll. 9 through 12, p. 36, ll. 5 through 17, Exhibit A-1].

The final class Mr. Platt conducted was on October 16, 2006. Before the incident involving plaintiff and Defendant Glenn, Mr. Platt had Tased four other detention officers on that date and ten other officers earlier. [*Id.* p. p. 50, ll. 20 through 25, p. 51, ll. 1 through 23, Exhibit A-1]. Mr. Platt followed the same protocol for everyone who was Tased, including Plaintiff and

Defendant Glenn. [*Id.* p. 91, ll. 15 through 20 (conduct and reaction for Plaintiff and Defendant Glenn were the same as the other officers Tased), Exhibit A-1].

The officers were paired up and asked to kneel in front of an inflated air mattress. After kneeling on the floor in front of an air mattress, Mr. Platt clipped a Taser lead onto each of the participants. The paired participants would then interlock arms, and Mr. Platt pulled the trigger on the Taser for one to one and one-half-seconds. The participants fell forward onto the air mattress.

Defendant Glenn was the final person to be Tased as part of the training Mr. Platt was hired to conduct. One of the detention officers who was supposed to be at the class had not shown up. Although there is a dispute as to how Plaintiff became involved in the class, Plaintiff and Defendant Glenn ended up being paired together. [*Id.* p. 90, ll. 15 through 25, p. 91, ll. 1 through 20, Exhibit A-1]. They were Tased exactly like the prior fourteen deputies who had gone before them. [*Id.* p. 91, ll. 15 through 20].

There is no evidence that anybody complained of any injuries or harm related being subjected to the one-second shock they received in any of the classes conducted by Mr. Platt. [*Id.*]. Until this lawsuit was filed, nobody complained of suffering any harm whatsoever as a result of the Taser training Mr. Platt conducted. In fact, Plaintiff denied that he suffered any injuries both to the reporter from the Denver Post, and during the interview conducted by Sheriff Walker and Leonard Post on February 3, 2004. [*See* Investigative Interview conducted by Leonard Post, on February 3, 2004, p. 4, Exhibit A-5; *see also* Denver Post article, Exhibit A-6].

There is no evidence that Defendant Glenn knew that participating in Taser training with Plaintiff would present an "excessive risk" to plaintiff's health and safety. Defendant Glenn

subjected himself to the exact same conduct Plaintiff was subjected to, as did all of the other detention officers.  Defendant Glenn did not have the culpable state of mind necessary to impose liability on him under 42 U.S.C. § 1983 as a matter of law.

Both the objective and subjective prongs of Plaintiff's medical care claim against Defendant Glenn are lacking here.  In addition, there is no evidence whatsoever that Defendant Glenn had any personal participation in addressing plaintiff's medical needs.  [*See* Montoya Dep., p. 213, ll. 4 through 8, Exhibit A-4].  As a result, Defendant Glenn also is entitled to qualified immunity with regard to the allegations in Plaintiff's second claim for relief.

As to his medical claim, Plaintiff cannot present any evidence of harm that rises to a level of "sufficiently serious" to be cognizable under the Eighth Amendment.  As indicated, Plaintiff denied he suffered any harm other than a skin burn in February 2004 when he first complained about the Taser incident to the media and Sheriff Walker.  [*See* Investigative Interview conducted by Leonard Post, on February 3, 2004, p. 4, Exhibit A-5; *see also* Denver Post article, Exhibit A-6].  Plaintiff was provided with medical treatment in June 2004 at Park County jail for headaches he was experiencing for the "last month," which he thought was related to his sinuses. At that time, he was diagnosed with sinusitis and dental disease.  Plaintiff has not endorsed any medical experts in this case.  Defendant Glenn submits that Plaintiff cannot establish that he suffered a "serious medical" condition sufficient to meet the objective component of an Eighth Amendment claim for failure to provide medical care.

Furthermore, Plaintiff testified he never discussed his medical condition with Defendant Glenn while at Chaffee County jail.  [*See* Montoya Dep., p. 213, ll. 4 through 8, Exhibit A-4]. Therefore, Plaintiff cannot establish that defendant Glenn had any personal participation in

Plaintiff's medical treatment.   Thus, there is absolutely no evidence that Defendant Glenn acted with "deliberate indifference" to any of plaintiff's medical needs, let alone his "serious medical needs."   Defendant Glenn is entitled to qualified immunity for the exact same reasons Sheriffs Walker and Wagener are entitled to qualified immunity.

## IV.   PLAINTIFFS' CLAIMS CONTAIN INSUFFICIENT SPECIFIC AND NON-CONCLUSORY ALLEGATIONS TO DEMONSTRATE ANY CONSPIRACY EXISTED BETWEEN THE INDIVIDUAL DEFENDANTS

Plaintiff alleges a grand conspiracy between Defendants Glenn, Walker, Wegener, Park County, and Chafee County yet fails to establish any factual support to demonstrate any conspiracy existed among any Defendants to violate his constitutional rights.   A review of record before this Court establishes Plaintiff failure to allege specific, concrete, non-conclusory facts evidencing any of the essential elements of a conspiracy.   To avoid entry of summary judgment, Plaintiff must make a showing sufficient to establish the existence of the elements of a conspiracy. *McKibben v. Chubb*, 840 F.2d 1525, 1532-1533 (10th Cir. 1988).

To establish a § 1983 conspiracy claim, a plaintiff must demonstrate the alleged conspirators had a meeting of the minds and engaged in concerted action to violate the plaintiff's constitutional rights. *Gallegos v. City & County of Denver,* 984 F.2d 358, 364 (10th Cir.), *cert. denied,* 508 U.S. 972 (10th Cir. 1993); *Dixon v. City of Lawton,* 898 F.2d 1443, 1449 (10th Cir. 1990).   Importantly, "[w]hen a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." *Sooner Products Co. v. McBride,* 708 F.2d 510, 512 (10th Cir. 1983); *Durre v. Dempsey,* 869 F.2d 543, 545 (10th Cir.

1989); *Gallagher v. Neil Young Freedom Concert,* 49 F.3d 1442, 1453 (10th Cir. 1995); *Martin v. Stites,* 31 F.Supp.2d 926 932-33(D.Kan. 1998).

Applying these precedents to the undisputed facts of this action demonstrates Plaintiff has failed to allege with sufficient non-conclusory factual particularity any conspiracy to violate his constitutional rights by any of these Defendants. Plaintiff offers nothing more than conclusory allegations, speculation and innuendo concerning the alleged conspiracy. Plaintiff cannot present sufficient evidence of any meeting of the minds amongst the alleged conspirators or any concerted action taken with the conspiratorial goal of violating Plaintiff's constitutional rights.

A review of the record in this matter reveals Plaintiff alleges a grand conspiracy between the individual Defendants. Plaintiff alleges the following conspiracy:

--   On October 17, 2003, the Chaffee County Sheriff was having a training exercise for deputies who were learning how to appropriately use Taser-brand stun-guns (hereafter "Tasers"). [*See* Complaint, ¶ 6, Docket No. 1].

--   On that date, Defendant Deputy Scott Glenn, ordered that Plaintiff link arms with him so they could both get "tased." [*Id.*, ¶ 7].

--   Both Defendant Glenn and Plaintiff were attached to the Taser. [*Id.*, ¶ 8].

--   Defendant Platt fired a taser burst which went through Plaintiff's body allegedly causing substantial pain and injury to him. [*Id.*, ¶ 9].

--   Plaintiff complained about the Taser incident to Defendant Walker, Chaffee County Sheriff. [*Id.*, ¶ 12].

--   Plaintiff also gave an interview to the Denver Post complaining of the Taser incident. [*Id.*]

--   In retaliation for complaining about the Taser incident, Defendants Glenn, Platt, Walker, and Chaffee County transferred Plaintiff to the Park County Jail where Defendants Wegener and Park County joined in the conspiracy by placing Plaintiff in segregation. [*Id.*, ¶¶ 14 through 16].

--    All Defendants were engaged in a conspiracy to violate Plaintiff's civil rights. Defendant Glenn and Platt conspired to violate Plaintiff's right to be free from cruel and unusual punishment and an unreasonable seizure when they conspired to "tase" him and then did so; Defendants Glenn, Platt, Walker, Wegener, Chaffee County and Park County all conspired to cover-up the taser incident and to retaliate against Plaintiff by denying him medical care and placing him into a punitive lock-down status after he complained about being abused.  [*Id.*, ¶ 17].

When reviewed in its entirety Plaintiff's allegations fail to allege any actual specific, concrete, and non-conclusory facts demonstrating a conspiracy actually existed.    Initially, insufficient allegations exist of any meeting of the minds between Defendants Glenn and the other Defendants in the first instance.    Plaintiff asserts that, on October 17, 2003, a "training exercise for deputies who were learning how to appropriately use Taser-brand stun-gun."   [*See* Complaint, ¶ 6, Docket No. 1].   Defendant Glenn ordered Plaintiff to lock arms with him, [*id.* ¶ 7], both were then hooked to the Taser, [*id.* ¶ 8], and then both were hit with a bolt from the Taser.   [*Id.* ¶ 9].    None of these allegations demonstrate any meeting of the mind between Defendants Glenn and the other Defendants, nor, for that matter, are there any allegations suggesting any meeting of the mind or other contact of any kind between any Defendant.

Plaintiff attempts to link the Defendants in an alleged conspiracy to injury him and deny him medical treatment without providing any actual specific, concrete, and non-conclusory facts demonstrating a conspiracy actually existed.    Plaintiff does not allege and cannot produce any admissible evidence to establish that there were any meetings, telephone conversations, or other contact between Defendants alleged to have conspired against Plaintiff.    Plaintiff presents no factual allegations, and cannot produce any evidence, of any conspiratorial meeting of the minds between any of the Defendants.    Indeed, there is no evidence that Defendant Glenn even spoke to

any other Defendant either prior to or immediately following the Taser incident about the incident.

Such allegations and evidence fall far short of demonstrating any meeting of the minds or conspiratorial agreement to violate Plaintiff's constitutional rights.   Simply because several conspirators may have had the opportunity to meet and engage in conspiratorial discussions does not equate to a meeting of the minds to support a conspiracy.   In particular, if other non-conspiratorial reasons explain any of the contact between the alleged conspirators, such as a Chaffee County training session on the use of Tasers, the inference of a conspiracy becomes even less plausible. *See, e.g., Tonkovich v. Kansas Bd. Of Regents,* 159 F.3d 504, 513 (10th Cir. 1998) ("We do not think it is reasonable to infer, for example, that because certain Law School faculty members met with certain administrators during the investigation, they were conspiring with one another and with the Hearing Committee who ultimately found against Professor Tonkovich."); *Fry v. Board of County Commissioners of County of Baca,* 7 F.3d 936, 942-43 (10th Cir. 1993) (holding telephone calls between neighboring landowners and county commissioners insufficient to infer existence of a conspiracy); *Gressley v. Deutsch,* 890 F. Supp. 1474, 1484-85 (D.Wyo. 1994) (contact between alleged conspirators insufficient to demonstrate meeting of the minds or agreement).

None of the factual allegations asserted by Plaintiff evidence a conspiracy, let alone that all of the alleged conspirators had any knowledge of the essential objective of the conspiracy. *See United States v. Dozal,* 173 F.3d 787, 797 (10th Cir. 1999) (describing knowledge of the objectives of the conspiracy as an essential element in a criminal conspiracy prosecution); *United States v. Ruiz-Castro,* 92 F.3d 1519, 1530 (10th Cir. 1996) (same). Here, other reasons

existed for the individual Defendants' interactions.   It is undisputed that the Chaffee County Sheriff's Department was conducting a training session on the use of Tasers on October 16, 2003.   It is further undisputed that Defendants Glenn participated in the training session. Plaintiff was moved to the Park County facility based on his complaints of mistreatment at Chaffee County.   Such facts are insufficient to establish a conspiracy under the above precedents. None of the evidence indicates, for example, that any agreement between all alleged conspirators existed either prior to or after October 16, 2003, to attempt to violate any of the constitutional rights of Plaintiff.   Instead, Plaintiff offers only conclusory assertions, innuendo and speculation in an attempt to create a conspiracy out of whole cloth.   Simply because some of the conspirators knew each other and interacted during the time period of the alleged conspiracy is insufficient to demonstrate any conspiratorial agreement actually existed.

Plaintiff fails to present any factual evidence that would equate to either an overt agreement or an official acquiescence in an attempt to injury Plaintiff and deny him medical treatment.   A quantum leap of logic exists between the facts alleged with the proposition that this demonstrates a conspiracy to violate Plaintiff's civil rights in all of the particulars alleged.   In sum, no actual facts uncovered support any such conclusion.

Second, Plaintiff offers no proof of any concerted action taken by all of the individual Defendants demonstrating the existence and furtherance of any conspiracy.   To demonstrate concerted action, Plaintiff must provide sufficient facts to support the inference that some prearranged plan or joint action existed between the conspirators to engage in all of the alleged conspiratorial activities.   Plaintiff presents no evidence establishing that the individual Defendants conspired to violate his constitutional rights.   No facts exist demonstrating any

concerted action on the part of Defendants to accomplish any alleged objective.  No facts have been presented to support a conclusion that Defendants Glenn discussed any alleged plot, with the other Defendants, to injure Plaintiff with the Taser prior to October 16, 2003.  Nothing indicates any awareness on the part of any Defendant, prior to the request on October 16, 2003, that Plaintiff would be required to participate in the Taser training session.  Indeed, no facts whatsoever link any Defendant to any alleged assault on Plaintiff.  Without some actual evidence of any concerted action or overt acts taken by Defendants with respect to Plaintiff's allegation of a conspiracy, which include the Taser incident, Plaintiff's conspiracy allegations again fail as a matter of law.

Third, no facts have been presented to demonstrate a specific conspiracy amongst Defendants to violate any of Plaintiff's constitutional rights.  Plaintiff has established no actual specific, concrete and non-conclusory facts to establish that Defendants Glenn or any of the other conspirators had the specific intent to engage in any behavior which purportedly violated the constitutional rights of Plaintiff.  Plaintiff's allegations at best demonstrate that Defendant Glenn may have acted negligently in allowing Plaintiff to participate in the Taser training session.  However, no facts add up to the conspiracy alleged by Plaintiff.  In fact, if Defendant Glenn sought to injure Plaintiff, it would be reasonable to assume he would not have attached himself to Plaintiff in order to be tased together.

Although discovery is now completed, Plaintiff can present no evidence whatsoever to support the conclusion any individual Defendant knowingly participated in any conspiracy to harm Plaintiff or otherwise violate his constitutional rights.  In sum, Plaintiff has failed to allege, and cannot prove, any specific, concrete and non-conclusory facts to demonstrate the existence

of a conspiracy by and amongst Defendants Glenn, Walker, Wegener, Chaffee County, and Park County to violate his constitutional rights. No affirmative, logical or reasonable nexus exists between the isolated facts relied upon by Plaintiff and the broad alleged conspiracy Plaintiff advances. Insufficient facts exist to support Plaintiff's bald assertions that all of the Defendants conspired to violate his rights. Plaintiff engages in a series of unsupported inferences, innuendo, speculation, and conclusory allegations instead of providing specific and concrete facts to support his claims. *See Aylett v. Secretary of Housing & Urban Development,* 54 F.3d 1560, 1568 (10th Cir. 1995) (discussing principles of logical reasoning). Judged against the rules of logic described in *Aylett*, Plaintiff's central conclusions concerning the alleged conspiracy remain unsupported by any facts. Both Plaintiff's reasoning and his premises are logically false. As a result, Plaintiff's 42 U.S.C. § 1983 conspiracy claim fails as a matter of law.

## V.   WITHOUT ANY CONSPIRACY CLAIM, PLAINTIFF'S CLAIM CONCERNING HIS SEGREGATION AT PARK COUNTY IS WITHOUT MERIT

Plaintiff claims that upon his arrival at Park County Jail he was placed in segregation does not rise to the level of a constitutional violation. Under the United States Constitution, Plaintiff's placement in segregated confinement is not an atypical, significant deprivation that will give rise to a liberty interest entitled to constitutional protection. *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996) (citing *Sandin v. Conner*, 515 U.S. 472, 486 (1995)). Every decision to remove a particular inmate from the general prison population for an indeterminate period cannot be characterized as cruel and unusual. If new conditions of confinement are not materially different from those affecting other prisoners, a transfer for the duration of a prisoner's sentence might be completely unobjectionable and well within the

authority of the prison administrator.  ***Hutto v. Finney,*** 437 U.S. 678, 686 (1978).  Plaintiff makes no allegation that his removal from population was materially different from segregations experienced by other prisoners.  His only claim is that his placement in segregation at Park County was instigated as part of a conspiracy to retaliate against him for his complaints of abuse at Chaffee County Jail.  [*See* Complaint, at 12, ¶¶ 67 through 70].  Since, as discussed above, no conspiracy can be established, Plaintiff's claim must be considered only on the basis of being placed in segregation.

As such, any attempt by Plaintiff to establish a constitutional violation fails for lack of a constitutional deprivation.  Plaintiff does not have a liberty interest in not being housed in segregation or in any particular correctional institution.  In ***Sandin***, ***supra***, the United States Supreme Court stated that although States may create liberty interests protected by the Due Process Clause, such "interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  ***Id.*** at 484 (internal citation omitted).  Placement in segregated confinement, which is the basis of Plaintiff's claims, is not an atypical, significant deprivation that will give rise to a liberty interest.  *See **id.*** at 486; *see also **Talley v. Hesse***, 91 F.3d 1411, 1412 (10th Cir. 1996).

Likewise, inmates have no inherent constitutionally protected right to housing in a particular institution or to a particular classification.  *See **Vitek v. Jones***, 445 U.S. 480, 489 (1980); ***Meachum v. Fano***, 427 U.S. 215, 225 (1976).  As a result of a lack of any conspiracy to retaliate, Plaintiff's claims that he was wrongfully placed and kept in segregation is without

31

merit and such claim must be dismissed in its entirety with prejudice.   Again, because segregation does not give rise to a liberty interest, Plaintiff states no constitutional claim against Defendants.

## CONCLUSION

For the reasons set forth above,  Defendants Board of County Commissioners of Chaffee County, Colorado, Timothy Walker, Scott Glenn, Board of County Commissioners of Park County, Colorado, and Fred Wegener, respectfully request this Court dismiss Plaintiff's claims in their entirety with prejudice, and for all other and further relief as this Court deems just and appropriate.

Dated this 14th day of August 2006.

Respectfully submitted,


s/ Edmund M. Kennedy____              s/ Anthony Melonakis_____
Andrew D. Ringel, Esq.                Anthony Melonakis, Esq.
Edmund M. Kennedy, Esq.               Law Firm of Anthony Melonakis
of HALL & EVANS, L.L.C.               1660 Wynkoop, Ste. 800
1125 17th Street, Suite 600           Denver, CO 80202
Denver, CO 80202-5800                 (303) 730-0210
(303) 628-3300                        a_melonakis@hotmail.com
ringela@hallevans.com
kennedye@hallevans.com
**ATTORNEYS FOR ALL DEFENDANTS**      **ATTORNEY FOR DEFENDANT**
**EXCEPT DEFENDANT GLENN**            **SCOTT GLENN**

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on this 14th day of August 2006, I electronically filed the foregoing with the Clerk of Court using the CM/EFC system which will send notification of such filing to the following e-mail addresses:

David A. Lane, Esq.
dlane@killmerlane.com

Marcel Krzystek, Esq.
mkrzystek@killmerlane.com

Anthony Melonakis, Esq.
a_melonakis@hotmail.com

and I hereby certify that I have mailed or served the document or paper to the following non CM/EFC participants in the manner indicated by the non-participant's name:

None.

<u>s/Loree Trout,   Secretary</u>
Andrew D. Ringel, Esq.
Edmund M. Kennedy, Esq.
Hall & Evans, L.L.C.
1125 17th Street, Suite 600
Denver, CO 80202-2052
303-628-3300
Fax: 303-293-3238
ringela@hallevans.com
kennedye@hallevans.com
**ATTORNEYS FOR ALL DEFENDANTS**
**EXCEPT DEFENDANT GLENN**

H:\Users\RINGELA\park\Montoya, Thomas\MOT SUMMARY JUDGMENT.doc