IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–02533–EWN–MJW

THOMAS MONTOYA,

      Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS, CHAFFEE COUNTY, COLORADO,
in their official and individual capacities,
CHAFFEE COUNTY SHERIFF TIMOTHY WALKER, in his official and
individual capacity,
CHAFFEE COUNTY DEPUTY SHERIFF SCOTT GLEN, in his official and
individual capacity,
DAVID PLATT, in his official and individual capacity,
BOARD OF COUNTY COMMISSIONERS, PARK COUNTY, COLORADO, in
their official and individual capacities,
PARK COUNTY SHERIFF FRED WEGENER, in his official and individual
capacity,

      Defendants.

_____

## ORDER AND MEMORANDUM OF DECISION
_____

      This is a civil rights case arising under 42 U.S.C. § 1983 (2006) ("section 1983").  Plaintiff

Thomas Montoya alleges that Defendants Board of County Commissioners of Chaffee County

("Chaffee County"), Sheriff Timothy Walker, Scott Glenn, Board of County Commissioners of

Park County ("Park County"), Fred Wegener, and David Platt violated his constitutional rights by

subjecting him to a taser shock and later placing Plaintiff in segregation as punishment for

complaining to the press about being tased.[1]  This matter is before the court on: (1) "Partial

Motion to Dismiss from Defendants' Board of County Commissioners of Chaffee County, Sheriff

Timothy Walker, Scott Glenn, Board of County Commissioners of Park County, and Fred

Wegener," filed March 27, 2006; and (2) "Defendants' Motion for Summary Judgment," filed

August 14, 2006.  Jurisdiction is premised upon the existence of a federal question, 28 U.S.C. §§

1331 and 1343 (2006).

## FACTS

### 1.    *Factual Background*

The relevant facts are essentially undisputed.  Plaintiff was an inmate within the Chaffee

County Jail.  (Defs.' Mot. for Summ. J., Statement of Undisputed Facts ¶ 13 [filed Aug. 14,

2006] [hereinafter "Defs.' Br."]; *admitted at* Pl.'s Resp. to Defs.' Mot. for Summ. J., Resp. to

Statement of Undisputed Facts ¶ 13 [filed Feb. 15, 2007] [hereinafter "Pl.'s Resp."].)  On

October 16, 2003, David Platt, an independent contractor and certified taser instructor hired by

Chaffee County Jail, held a training session for detention officers on appropriate use of a taser.

(*Id.*, Statement of Undisputed Facts ¶¶ 1–2; *admitted at* Pl.'s Resp., Resp. to Statement of

Undisputed Facts ¶¶ 1–2.)  This training session was to include six detention officers but only five

were present.  (*Id.*, Statement of Undisputed Facts ¶¶ 3–4; *admitted at* Pl.'s Resp., Resp. to

Statement of Undisputed Facts ¶¶ 3–4.)  Mr. Platt began the training session by subjecting the

participants to a taser jolt; receiving the taser jolt was not mandatory for detention officers.  (*Id.*,

_____

[1]A "taser" is a weapon that delivers a non-lethal electric shock.

Statement of Undisputed Facts ¶¶ 5–6; *admitted in relevant part at* Pl.'s Resp., Resp. to

Statement of Undisputed Facts ¶¶ 5–6.)  In administering the taser jolt, Mr. Platt: (1) paired

participants; (2) had those participants kneel in front of an inflated air mattress and interlock their

arms; (3) connected one of the two taser probes to each set of participants; and (4) administered a

shock that lasted one to one and a half seconds (as opposed to a standard taser shock that lasts up

to five seconds), causing the participants to fall forward on the inflated air mattress.  (*Id.*,

Statement of Undisputed Facts ¶¶ 7–11; *admitted at* Pl.'s Resp., Resp. to Statement of

Undisputed Facts ¶¶ 7–11.)

Following the tasering of the first two pairs, Defendant Glenn, upon realizing that he

would not have a partner, turned to Plaintiff and said, "Tommy, come in here and get tased with

me."  (*Id.*, Statement of Undisputed Facts ¶ 12; *admitted in relevant part at* Pl.'s Resp., Resp. to

Statement of Undisputed Facts ¶ 12 *and* Defs.' Reply in Supp. of Mot. for Summ. J., Reply

Concerning Disputed Facts ¶ 12 [filed Mar. 2, 2007] [hereinafter "Defs.' Reply"].)  Plaintiff

perceived this request to be a requirement pursuant to a verbal order.  (Pl.'s Resp., Resp. to

Statement of Undisputed Facts ¶ 6; *admitted at* Defs.' Reply, Reply Concerning Undisputed Facts

¶ 6.)  Plaintiff then participated in experiencing a taser shock as Defendant Glenn's partner

(hereinafter the "Incident").  (Defs.' Br., Statement of Undisputed Facts ¶ 13; *admitted at* Pl.'s

Resp., Resp. to Statement of Undisputed Facts ¶ 13.)

Prior to the Incident, Mr. Platt had never subjected an inmate to a taser jolt in a training

session at Chaffee County Jail, and Mr. Platt was never told by any Chaffee County employee that

an inmate could participate in any training sessions or otherwise be subjected to a taser jolt.  (*Id.*,

Statement of Undisputed Facts ¶¶ 14, 17; *admitted at* Pl.'s Resp., Resp. to Statement of

Undisputed Facts ¶¶ 14, 17.)  Following the Incident, Chaffee County Jail never again contracted

for Mr. Platt's services.  (*Id.*, Statement of Undisputed Facts ¶ 20; *admitted at* Pl.'s Resp., Resp.

to Statement of Undisputed Facts ¶ 20.)

      In late January 2004, Plaintiff contacted DENVER POST reporter Sean Kelly regarding the

Incident.  (Pl.'s Resp., Statement of Add'l Disputed Facts ¶ 1; *admitted at* Defs.' Reply, Resp.

Concerning Disputed Facts ¶ 1.)  Kelly's article about the Incident, titled "Inmate Was Used for

Taser Training," was published in the DENVER POST on February 4, 2004.  (*Id.*, Statement of

Add'l Disputed Facts ¶ 2; *admitted at* Defs.' Reply, Resp. Concerning Disputed Facts ¶ 2.)  Until

early 2004, when Defendant Walker learned Plaintiff had contacted the press regarding the

Incident, Defendant Walker had no knowledge of Plaintiff's involvement in the training session.

(Defs.' Br., Statement of Undisputed Facts ¶¶ 18, 21; *admitted at* Pl.'s Resp., Resp. to Statement

of Undisputed Facts ¶¶ 18, 21 *and* Defs.' Reply, Resp. Concerning Disputed Facts ¶ 18.)  As a

result of the Incident, Defendant Glenn was suspended without pay for three days.   (Defs.' Br.,

Statement of Undisputed Facts ¶ 19; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed

Facts ¶ 19.)

      For the purported reason of forestalling any possibility of retaliation against Plaintiff by

anyone associated with the Chaffee County Jail as a result of his complaint, the Chaffee County

Sheriff's Department arranged for Plaintiff to be transferred to the Park County Jail for the

remainder of his sentence.  (*Id.*, Statement of Undisputed Facts ¶¶ 22–23; *admitted in relevant*

*part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶¶ 22–23.)  Chaffee County Jail

Administrator Nick Leva contacted Park County Jail Administrator Monte Gore to request that Park County Jail house Plaintiff for the remainder of his incarceration.  (*Id.*, Statement of Undisputed Facts ¶ 24; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 24.) Plaintiff was incarcerated at Park County Jail from February 3, 2004 until June 26, 2004.  (*Id.*, Statement of Undisputed Facts ¶ 25; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 25.)  During his time at the Park County Jail, Plaintiff was classified as a protective custody inmate purportedly due to concerns for Plaintiff's safety, because he was previously a corrections officer with the Colorado Department of Corrections and the Park County Jail houses inmates of the Colorado Department of Corrections.  (*Id.*, Statement of Undisputed Facts ¶ 26; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 26.)  The decision to place Plaintiff in protective custody was made by Park County Jail Administrator Monte Gore in consultation with Sergeant Dan Muldoon.[2]  (*Id.*, Statement of Undisputed Facts ¶ 27; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 27.)  While in Park County Jail, Plaintiff was subjected to far more severe conditions of confinement than in Chaffee County Jail, including twenty-three-hour-per-day lockdown in maximum security.  (Pl.'s Resp., Statement of Add'l Disputed Facts ¶ 5; *admitted at* Defs.' Reply, Resp. Concerning Disputed Facts ¶ 5.)

Prior to his transfer to Park County Jail, Plaintiff was not in protective custody, but was instead incarcerated with the general population without incident.  (*Id.*, Statement of Add'l Disputed Facts ¶ 4; *admitted at* Defs.' Reply, Resp. Concerning Disputed Facts ¶ 4.)  Plaintiff was

---

[2]The parties do not clarify for which county Sergeant Muldoon worked.

also previously incarcerated in general population for five months in Fremont County without incident.  (*Id.*, Statement of Add'l Disputed Facts ¶ 3; *admitted at* Defs.' Reply, Resp. Concerning Disputed Facts ¶ 3.)

Defendants Walker and Wegener never communicated with one another concerning Plaintiff.  (Defs.' Br., Statement of Undisputed Facts ¶ 28; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 28.)  Defendants Wegener and Glenn never communicated with one another concerning Plaintiff.  (*Id.*, Statement of Undisputed Facts ¶ 29; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 29.)

Prior to filing this action, Plaintiff indicated on several occasions that he had suffered no injuries as a result of the Incident.  (*Id.*, Statement of Undisputed Facts ¶ 30; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 30.)  Plaintiff never discussed issues concerning his conditions of confinement at Park County Jail with Defendant Wegener or any member of Park County.  (*Id.*, Statement of Undisputed Facts ¶¶ 37–38; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶¶ 37–38.)

**2.    *Procedural History***

On December 14, 2005, Plaintiff filed a complaint with this court alleging: (1) Defendants Chaffee County, Walker, Glenn, and Platt violated Plaintiff's Fourth, Eighth, and Fourteenth Amendment rights to be secure in his person from cruel and unusual punishment and unreasonable seizure by subjecting him to a taser shock; (2) all Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by failing to provide medical care after the taser shock; (3) Defendants Walker and Chaffee County violated Plaintiff's Eighth and

Fourteenth Amendment rights to be free from cruel and unusual punishment by failing to train and supervise or recklessly training and supervising deputies to prevent physical abuse of inmates; (4) all Defendants violated Plaintiff's First, Fourth, and Eighth Amendment rights to be secure from cruel and unusual punishment and unreasonable seizures, as well as to protest constitutional violations by conspiring to tase Plaintiff, refusing to provide him medical treatment, and retaliating against him for complaining about the Incident.[3]  (Compl. ¶¶ 18–70 [filed Dec. 14, 2005] [hereinafter "Compl."].)  On March 27, 2006, Defendants Chaffee County, Park County, Walker, and Wegener filed an answer.  (Answer to Pl.'s Compl. from Defs. Bd. of County Commissioners of Chaffee County, Timothy Walker, Bd. of County Commissioners of Park County, and Fred Wegener and Jury Demand [filed Mar. 27, 2006].)  On April 21, 2006, Defendant Glenn filed an answer.  (Def. Scott Glenn's Answer and Jury Demand [filed Apr. 21, 2006].)  On June 2, 2006, Defendant Platt filed an answer. [Answer [filed June 2, 2006].)

On March 27, 2006, all Defendants except Platt filed a partial motion to dismiss, arguing the applicable statute of limitations barred any claim by Plaintiff based on the Incident.  (Partial Mot. to Dismiss from Defs. Bd. of County Commissioners of Chaffee County, Timothy Walker, Scott Glenn, Bd. of County Commissioners of Park County, and Fred Wegener [filed Mar. 27, 2006] [hereinafter "Defs.' Mot. to Dismiss"].)  On April 17, 2006, Plaintiff responded to the motion.  (Resp. to Partial Mot. to Dismiss from Def. Bd. of County Commissioners of Chaffee County, Timothy Walker, Scott Glenn, Bd. of County Commissioners of Park County, and Fred

---

[3]Plaintiff agrees to voluntarily dismiss his failure to provide medical care and treatment claims. (Pl.'s Resp. at 3 n.2.) Thus, I do not further address these claims in the instant order.

Wegener [filed Apr. 17, 2006] [hereinafter "Pl.'s Resp. to Mot. to Dismiss"].)  On May 12, 2006,

Defendants replied in support of their motion.  (Reply Br. in Supp. of Partial Mot. to Dismiss Pl.'s

Compl. [filed May 12, 2006] [hereinafter "Defs.' Reply to Mot. to Dismiss"].)

On August 3, 2006, this court granted Defendant Platt's unopposed motion to dismiss

Plaintiff's claims against Defendant Platt with prejudice.  (Order of Dismissal with Prejudice [filed

Aug. 3, 2006].)  On August 14, 2006, all remaining Defendants (hereinafter "Defendants") filed a

motion for summary judgment arguing: (1) Plaintiff's claims based on the Incident are barred by

the applicable statute of limitations; (2) Park County and Chaffee County are not the proper

parties for suit; (3) Plaintiff has failed to establish a policy or custom that allowed for the Incident

to occur; (4) the individual Defendants are entitled to qualified immunity; (5) Plaintiff's claims

contain insufficient specific and non-conclusory allegations to demonstrate any conspiracy existed

to violate his constitutional rights; and (6) because the conspiracy claim fails, Plaintiff's claim

concerning his segregation at Park County Jail must also fail.  (Defs.' Br. at 8–32.)  On February

15, 2007, Plaintiff responded to the motion.  (Pl.'s Resp.)  On March 2, 2007, Defendants replied

in support of their motion.  (Defs.' Reply.)  This matter is fully briefed and ripe for review.

## ANALYSIS

### 1.      *Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)

(2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers*, 150 F.3d at 1274 (citing *Concrete Works*, 36 F.3d at 1517).

**2.     *Evaluation of Claims***

Because Defendants incorporate the arguments and authorities contained in their motion to dismiss into their motion for summary judgment, I address only the summary judgment motion. (Defs.' Br. at 8.) Defendants argue they are entitled to summary judgment because: (1) Plaintiff's claims based on the Incident are barred by the applicable statute of limitations; (2) Plaintiff's

claims against the Park and Chaffee Counties fail because these parties cannot be held liable for the actions of ex-Defendant Glenn; (3) Plaintiff has failed to establish a policy or custom that allowed the Incident to occur; (4) the individual Defendants are entitled to qualified immunity; (5) Plaintiff's claims contain insufficient specific and non-conclusory allegations to demonstrate any conspiracy existed to violate his constitutional rights; and (6) because Plaintiff's conspiracy claim fails, his claim concerning his segregation at Park County Jail must also fail.[4]  (*Id.* at 8–32.) Plaintiff counters that: (1) because the Incident was part of a continuing conspiracy, any claims based on the Incident are not barred by the applicable statute of limitations; (2) because Chaffee and Park Counties are policy makers for their respective county jails, they may be sued under section 1983; (3) no Defendants are entitled to qualified immunity, because they violated clearly established law regarding cruel and unusual conduct; and (4) there is sufficient circumstantial evidence to allow the jury to infer the existence of a conspiracy to violate Plaintiff's constitutional rights.  (Pl.'s Resp. at 6–27.)

All of Plaintiff's claims are brought pursuant to Section 1983, which provides a remedy for constitutional violations committed by state or private actors under color of state law.  *See* 42 U.S.C. § 1983 (2006).  Specifically, section 1983 provides that:

---

[4]Defendants also argue that because Plaintiff's constitutional claims arise in the prison context and are brought by an incarcerated person, Plaintiff cannot bring a Fourteenth Amendment substantive due process claim in addition to his Eighth Amendment claim.  (Defs.' Br. at 15–17.)  It his response, Plaintiff asserts that he does not bring a Fourteenth Amendment substantive due process claim.  (Pl.'s Resp. at 15.)  Instead, his claims regarding the Incident are brought pursuant to the Fourth and Eighth Amendments, which are incorporated into the Fourteenth Amendment.  (*Id.*)  Because of the foregoing, I do not address Defendants' arguments relating to substantive due process.

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* Thus, to establish a violation of section 1983, Plaintiff must allege that: (1) Defendants acted under color of state law to deprive him of a right, and (2) the right of which Defendants deprived him was secured by the Constitution or the laws of the United States. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). Defendants do not address, and therefore necessarily do not dispute, that Defendants are state actors and the Constitution protects the rights allegedly violated in this case. (*See* Defs.' Br.; Defs.' Reply.) With these general considerations in mind, I address Defendants' arguments in further detail below.

### a.      *Statute of Limitations*

Defendants contend that Plaintiff's claims based on the Incident are time-barred because more than two years passed between the date of the Incident and Plaintiff's filing of the action. (Defs.' Mot. to Dismiss at 4–6.) Further, Defendants assert that the continuing violation doctrine cannot save Plaintiff's claim, because the doctrine is inapplicable to section 1983 actions. (*Id.*) Even if the doctrine were applicable, Defendants argue that Plaintiff makes insufficient specific and non-conclusory allegations to demonstrate any conspiracy existed. (Defs.' Reply to Mot. to Dismiss at 4–9.) To avoid the effect of the statute of limitations, Plaintiff invokes the continuing violation doctrine to link two alleged wrongful acts by Defendants as a single enterprise to violate

his constitutional rights: (1) the October 16, 2003 Incident; and (2) Plaintiff's placement in segregation from early February 2004 through June 26, 2004.  (Pl.'s Resp. at 6–11.)

Because Congress established no specific statute of limitations for actions brought pursuant to section 1983, the general personal injury or residual statute of limitations of the forum state applies.  *Wilson v. Garcia*, 471 U.S. 261, 275 (1985); *see* 42 U.S.C. § 1988(a) (2006).  In Colorado, a two-year statute of limitations period found in Colorado Revised Statutes section 13–80–102(6) applies to federal civil rights claims asserted under section 1983.  *Workman v. Jordan*, 32 F.3d 475, 482 (10th Cir. 1994).  Although state law governs the time period within which a section 1983 claim must be commenced, the issue of when a claim accrues is a question of federal law.  *Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005).  A section 1983 claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action."  *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993).

### i.   *Continuing Violation Doctrine*

"The continuing violation doctrine permits a Title VII plaintiff to challenge incidents that occurred outside the statutory time limitations of Title VII if such incidents are sufficiently related and thereby constitute a continuing pattern of discrimination."[5]  *Hunt v. Bennet*, 17 F.3d 1263, 1266 (10th Cir. 1994).  Defendants argue the continuing violation doctrine is inapplicable to section 1983 claims.  (Defs.' Mot. to Dismiss at 4–5.)  In support, Defendants point to a number

---

[5]Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (2006), prohibits employers from discriminating against their employees on the basis of certain protected characteristics.

of cases from this circuit declining to extend the doctrine, (*id.* [citing, *e.g.*, *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1513–14 (10th Cir. 1997)]), as well as an unpublished decision from this court opining that the doctrine does not apply to section 1983 claims, (*id.* [citing *Akers v. Ortiz*, Civ. Action No. 01–N–2513 (PAC) (D. Colo. Aug. 25, 2004)].  It is true that the Tenth Circuit has held the continuing violation doctrine inapplicable to 42 U.S.C. § 1981 claims, reasoning the doctrine "is a creation of federal law that arose in Title VII cases" because "of the need to file administrative charges [in such cases]."[6] *Thomas*, 111 F.3d at 1513–14.  The court explained that "because a [§] 1981 claim does not require filing such charges before a judicial action may be brought, the continuing violation theory is simply not applicable." *Id.*  This court, in turn, reasoned in *Akers* that the logic of *Thomas* and its progeny suggest that the Tenth Circuit will not apply the doctrine to section 1983 claims.  Civ. Action No. 01–N–2513 (PAC) at 9.  However, as Plaintiff points out, after *Akers* the Tenth Circuit made clear that, in contrast to section 1981 claims, the court had not "announced a precedential blanket rule that the continuing violation doctrine is inapplicable to § 1983 suits." *McCormick v. Farrar*, 147 Fed. App'x 716, 719–20 (10th Cir. 2005).  The court proceeded to assume, without deciding, that the continuing violation doctrine does apply to section 1983 actions.  *Id.* at 720.  For the purposes of this order, I will do the same, as I find the doctrine does not save Plaintiff's claims based on the Incident from being time-barred.

---

[6]42 U.S.C. § 1981 proscribes "all intentional racial discrimination in the making or enforcement of private or public contracts." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1134 (10th Cir. 2004) (citations omitted).

### ii.     *Conspiracy to Tase Plaintiff*

For the continuing violation doctrine to apply, there must be at least one act within the statutory filing period. *Id.*; *see Furr v. AT&T Techs., Inc.*, 824 F.2d 1537, 1543 (10th Cir. 1987) (finding "there must be at least one instance of discriminatory practice within the filing period for the continuing violation theory to apply"). Here, Plaintiff alleges that Defendants engaged in a conspiracy to tase him and punish him for complaining about the Incident. (Compl. ¶¶ 54–70.) This conspiracy, according to Plaintiff, began on October 16, 2003 — the date of the Incident — and continued through his segregated confinement at Park County Jail, which ended on June 26, 2004. (Pl.'s Resp. at 8–9.) Plaintiff filed his complaint on December 14, 2005, which he argues is well before the expiration of the two-year limitations period. (*Id.*) According to Plaintiff, the decision to tase and then segregate him in retaliation for complaining to the press were part of a single, continuing scheme. (*Id.*)

Defendants assert that even if the continuing violation doctrine may be applied to section 1983 actions, Plaintiff makes insufficient specific and non-conclusory allegations to demonstrate a conspiracy existed between any of Defendants. (Defs.' Reply to Mot. to Dismiss at 4–9.) Plaintiff counters that he has put forth sufficient circumstantial evidence of a conspiracy to warrant sending the issue to the jury. (Pl.'s Resp. at 26–27.) Specifically, Plaintiff argues that, considering he was incarcerated at Chaffee County Jail in the general population without incident prior to his transfer to Park County Jail, a jury may infer from his placement in protective custody after his transfer, which resulted in far more severe conditions of confinement than at Chaffee

County Jail, was motivated by a desire to retaliate against Plaintiff for complaining about the Incident.  (*Id.* at 27.)

To state a section 1983 conspiracy claim, a plaintiff must demonstrate the alleged conspirators had a meeting of the minds and engaged in concerted action to violate the plaintiff's constitutional rights.  *Gallegos v. City & County of Denver*, 984 F.2d 358, 364 (10th Cir. 1993). Plaintiff correctly points out that his conspiracy claim may rest upon circumstantial evidence. (Pl.'s Resp. at 26–27.)  Still, Plaintiff must provide sufficient facts to support the inference that some prearranged plan or joint action existed between the conspirators to engage in all of the alleged conspiratorial activities.  *Hunt*, 17 F.3d at 1266; *accord Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983) (noting that "mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action").  Plaintiff fails to allege a single fact that even conceivably suggests a meeting of the minds between any of the Defendants prior to early 2004, at which point Chaffee County Jail Administrator Nick Leva contacted Park County Jail Administrator Monte Gore to request that Park County house Plaintiff for the remainder of his incarceration. (Defs.' Br., Statement of Undisputed Facts ¶ 24; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 24.)  Prior to that time, Plaintiff does not allege that any Defendants communicated with one another regarding Plaintiff.  (*See* Compl.; Pl.'s Resp.)  In fact, Plaintiff admits that: (1) Defendant Walker had no knowledge of Plaintiff's involvement in the training session until early 2004; (2) Defendants Walker and Wegener never communicated with one another concerning Plaintiff; and (3) Defendants Wegener and Glenn never communicated with

-15-

one another concerning Plaintiff.  (Defs.' Br., Statement of Undisputed Facts ¶¶ 18, 28–29; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶¶ 18, 28–29.)

Further, even absent specific allegations regarding discussions between co-conspirators, Plaintiff has placed absolutely no evidence before the court, either direct or circumstantial, suggesting that Defendant Glenn hatched a plan to tase Plaintiff at any point prior to the time at which he called Plaintiff into the training room.  More importantly, there is no evidence suggesting Defendant Glenn communicated with others or planned with others to tase Plaintiff.[7] Even if Plaintiff is a correct that a jury may be able to infer a conspiracy based on his segregation at Park County Jail, Plaintiff has alleged no facts that would allow a jury to make an inference that a conspiracy existed prior to the decision to transfer him.

In the end, Plaintiff's claim that any Defendants engaged in a conspiracy to tase him rests solely upon "conclusory allegations" of the same, which are "as a matter of law, insufficient to demonstrate conspiratorial nexus." *Sooner Prods.*, 708 F.2d at 512.  Based on the foregoing, I find Plaintiff has failed to allege any facts that could support a finding that any Defendants formed the requisite conspiratorial intent prior to early 2004.  Because I cannot find any actions prior to that time, including the October 16, 2003 Incident, were part of an ongoing conspiracy, Plaintiff's claims resting upon the Incident are time-barred by the applicable statute of limitations.  *See* Colo. Rev. Stat. § 13–80–102(6) (2006).  Thus, Defendants are entitled to summary judgment on those

---

[7]Although I recognize the court is not the fact finder here, I feel compelled to note that the most reasonable inference from the facts before the court is that the decision to tase Plaintiff was a spur-of -the-moment act by a single officer, rather than part of a larger, pre-meditated, conspiratorial scheme.  Plaintiff has presented no evidence to weaken this inference.

claims based upon the Incident, which include Plaintiff's claims that his: (1) Fourth, Eighth, and Fourteenth Amendment rights were violated by being tased; (2) Eighth and Fourteenth Amendment rights were violated by Defendants Walker and Chaffee County's failure to supervise and train its employees so as to prevent such tasing; and (3) Fourth and Eighth Amendment rights were violated by Defendants' engaging in a conspiracy to tase him.

### b.     Conspiracy to Retaliate Against Plaintiff for Exercising His First Amendment Rights

The only remaining claim for this court to consider is Plaintiff's claim that Defendants Walker and Chaffee County conspired with Defendants Wegener and Park County, in violation of Plaintiff's First Amendment rights, to take custody of Plaintiff and impose punishment on him for complaining to the press about the Incident by placing him in segregation at Park County Jail. (Compl. ¶¶ 62–69.)  Plaintiff asserts this claim against Defendants Walker and Wegener in both their individual and official capacities.  Defendants do not contend this claim is barred by the applicable statute of limitations, because Plaintiff was placed in segregation less than two years before he filed his complaint.  (*See* Defs.' Br.; Defs.' Reply.)  Instead, Defendants aver that: (1) Chaffee and Park Counties, as well as Defendants Walker and Wegener in their official capacities, cannot be liable for conspiracy because Plaintiff alleges insufficient facts to prove that any of these Defendants either adopted or approved a custom or policy that caused Plaintiff's deprivation; (2) Chaffee and Park Counties cannot be held liable for actions that relate to Plaintiff's incarceration; (3) Defendants Walker and Wegener are entitled to qualified immunity; (4) Plaintiff's conspiracy claim fails because it contains insufficient specific and non-conclusory allegations; and (5) because

Plaintiff's conspiracy claim fails, his segregation at Park County Jail is not actionable.  (Defs.' Br. at 9–32.)  To the extent necessary, I address these arguments below.

### i.  *Custom or Policy*

Defendants argue that they are entitled to summary judgment on Plaintiff's conspiracy claim against Chaffee County and Park County, as well as Defendants Walker and Wegener in their official capacities, because Plaintiff has alleged insufficient facts to support a finding that any of these Defendants either adopted or approved a policy or custom which caused Plaintiff's deprivation.  (*Id.* at 9–13; Defs.' Reply at 5–6.)  Plaintiff does not directly respond to Defendants' argument, but instead focuses on the relevant Defendants as bonafide policymakers.  (*See* Pl.'s Resp. at 11–13.)

Section 1983 does not provide for liability under the theory of *respondeat superior.  See Worrell v. Henry*, 219 F.3d 1197, 1214 (10th Cir. 2000).  However, municipal entities can be sued for monetary, declaratory, or injunctive relief for deprivations of constitutional or civil rights under section 1983.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  Municipal liability is limited to deprivations of federally protected rights caused by actions taken pursuant to official municipal policy or custom and  "attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action taken."  *Pembauer v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *accord Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691.  "To establish municipal liability, a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged."  *Jenkins v. Wood*, 81 F.3d 988, 993–94 (10th Cir. 1996).

Further, "[i]f the plaintiff asserts the alleged custom or policy comprised a failure to act, he or she must demonstrate the municipality's inaction resulted from 'deliberate indifference to the rights' of the plaintiff." *Id.* at 994 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 [1989]).

These same principles apply to Plaintiff's claim against Defendants Walker and Wegener in their official capacities, because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *accord Monell*, 436 U.S. at 691 (noting "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent").

Put simply, Plaintiff has utterly failed to plead facts that could conceivably support a finding of municipal liability for his placement in segregation. Nowhere in Plaintiff's complaint or response to Defendants' motion for summary judgment does Plaintiff allege that his placement in segregation was the result of a custom or policy. (*See* Compl. ¶¶ 62–70; Pl.'s Resp.) Even if such an allegation could be inferred, Plaintiff completely fails to support the allegation with any specific facts suggesting that his segregation rose to the level of a custom or policy, rather than being simply a single act of deprivation disconnected from any wider scheme. *See Mitchell v. City & County of Denver*, 112 Fed. App'x 662, 672 (10th Cir. 2004) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 [1989]) ("A custom is a 'persistent and widespread' practice that 'constitutes the standard operating procedure of the local governmental entity.'"). Based on the foregoing, I find Plaintiff has pled insufficient facts to support a finding of liability against Chafee and Park Coutnies, as well as Defendants Walker and Wegener in their official capacities.

Defendants are, thus, entitled to summary judgment on Plaintiff's conspiracy claim against these parties.

### ii.    *Qualified Immunity*

Defendants argue they are also entitled to summary judgment on Plaintiff's conspiracy claim against Defendants Walker and Wegener in their individual capacities, because Plaintiff fails to allege facts sufficient to demonstrate that either Defendant's respective conduct violated the law. (Defs.' Br. at 15–24.)  The doctrine of qualified immunity shields government officials from individual liability when they are performing discretionary functions that do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001).  "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation.  The privilege is an *immunity from suit* rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001) (citations omitted) (emphasis in original).  Whether a defendant is entitled to qualified immunity is a question of law. *Derda v. City of Brighton*, 53 F.3d 1162, 1164 (10th Cir. 1995).  Once a defendant claims qualified immunity, the plaintiff bears the "heavy two-part burden" of demonstrating that: (1) the defendant's alleged actions violated a constitutional or statutory right; and (2) the constitutional or statutory right was clearly established at the time of the alleged violation. *Trigalet v. Young*, 54 F.3d 645, 647 (10th Cir. 1995) (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534 [10th Cir. 1995]).

In determining whether qualified immunity shields Defendants Wegener and Walker from liability, this court is obliged to consider whether there has been a constitutional violation *before*

-20-

determining whether the law was clearly established.  *McCook v. Spring Sch. Dist.*, 44 Fed App'x

896, 902 (10th Cir. 2002) (citing *Saucier*, 533 U.S. at 201).  The goal in first answering this

question is to ensure that the law of qualified immunity does not stymie the development of

constitutional law.  *See id.*  Accordingly, I now turn to the question of whether Plaintiff's

allegations regarding his segregation at Park County Jail are sufficient to support his section 1983

conspiracy claim.

A section 1983 conspiracy claim must allege a conspiracy to deprive a plaintiff of a

constitutionally or federally protected right under color of state law.  *Dixon v. Lawton*, 898 F.2d

1443, 1449 n.6 (10th Cir. 1990).  Here, there is no dispute over whether, if Defendants engaged

in the alleged acts, they acted under color of state law.  (*See* Defs.' Br.)  The parties do, however,

dispute whether the alleged acts, if engaged in, would constitute a deprivation of a constitutionally

protected right.  Plaintiff alleges that being placed in segregation in retaliation for complaining

about the Incident violated his First Amendment right to free speech.  (*See* Compl. ¶ 69.)

Defendant urges that Plaintiff's placement in segregation does not rise to the level of a

constitutional violation because it is not an atypical, significant deprivation that infringes upon a

protected liberty interest.  (Defs.' Br. at 30–32; Defs.' Reply at 8–9.)

### *(1)      Application of the* **Worrell** *Standard*

First Amendment retaliation claims are most often brought in the public employment

context.  *McCook*, 44 Fed. App'x at 903.  However, when a plaintiff is not an employee of and

has no contractual relationship with the defendant, caselaw from this circuit suggests applying the

substantive standard announced in *Worrell v. Henry*.  219 F.3d at 1212; *see McCook*, 44 Fed.

App'x at 902 (applying *Worrell* standard outside the public employment context); *McCormick v. City of Lawrence*, 253 F. Supp. 2d 1156, 1168 (D. Kan. 2003) (same).  The *Worrell* standard requires proof of the following elements to support a First Amendment retaliation claim:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

219 F.3d at 1212 (internal quotations omitted).

First, Defendants do not contest that Plaintiff was engaged in constitutionally protected activity when he spoke with the press about the Incident.  (*See* Defs.' Br.)  Regarding the second *Worrell* element, Defendants contend that freedom from placement in segregation is not a constitutionally protected liberty interest.  (Defs.' Br. at 30–32.)  Defendants' contention is simply inapposite.  "'It is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under . . . [s]ection 1983 even if the act, when taken for a different reason, would have been proper.'"  *Smith v. Maschner*, 899 F.2d 940, 948 (10th Cir. 1990) (quoting *Buise v. Hudkins*, 584 F.2d 223, 229 [7th Cir. 1978]).  Here, the only question is whether Defendants' actions caused Plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in [the protected] activity."[8]  *Worrell*, 219 F.3d at

---

[8]It appears that Defendants' argument regarding Plaintiff's lack of a protected property interest in freedom from placement in segregation may be an attempt to respond to what Defendants perceive to be an Eighth Amendment claim by Plaintiff regarding his segregation. (*See* Defs.' Br. 30–32; Defs.' Reply 8–9.)  After reviewing Plaintiff's complaint and his response to summary judgment, this court finds no suggestion that Plaintiff is claiming his segregation violated the Eighth Amendment.  Plaintiff's complaint deals with his segregation in paragraphs

1212 (internal quotations omitted).  My review of the facts and relevant caselaw answers this

question in the affirmative.

At the outset, I note that common sense leads to the conclusion that being taken out of the

general population and placed in twenty-three-hour-per-day confinement in retaliation for

complaining to the press would deter a reasonable inmate from exercising that First Amendment

right in the future.  In *Smith*, which addressed a prisoner's retaliation claim for exercising his right

to access the courts, the Tenth Circuit implicitly found that the inmate's placement in segregation

for several months as well as his loss of good time credits was a sufficient adverse action to

survive summary judgment.  *See* 899 F.2d at 945–948.  Two cases cited favorably in *Smith* also

address retaliation claims in the prison context and lend support to this court's conclusion.  *See*

*Harris v. Fleming*, 839 F.2d 1232 (7th Cir. 1998) (suggesting a pattern of firings from job

assignments and cell transfers are sufficient adverse actions to survive summary judgment on a

retaliation claim for accessing the courts); *see also McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir.

1979) (internal citations omitted) ("A prisoner does not have a right to a hearing before being

transferred; indeed he can be transferred for no reason at all . . . .  However, he may nevertheless

establish a claim under [section] 1983 if the decision to transfer him was made by reason of his

exercise of constitutionally protected First Amendment Freedoms . . . .").  Finally, the Sixth

---

sixty-two through seventy.  (*See* Compl. ¶¶ 62–70.)  These paragraphs address only the First
Amendment and not the Eighth Amendment.  (*Id.*)  Further, Plaintiff's response includes a section
entitled "Plaintiff States a Cognizable Eighth Amendment Claim," which addresses only the
Incident and not Plaintiff's segregation.  (Pl.'s Resp. at 16–17.)  Based on the foregoing, I find
Plaintiff's claim regarding his segregation relies exclusively on the First Amendment.  (*See* Compl.
¶¶ 62–70; Pl.'s Resp. at 16–26.)

Circuit has made manifest that "'[i]n the prison context, an action comparable to transfer to administrative segregation would certainly be adverse,'" so as to prevent a prisoner of "ordinary firmness" from continuing to engage in activities protected by the First Amendment.  *Smith v. Yarrow*, 78 Fed. App'x 529, 540 (6th Cir. 2003) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 [6th Cir. 1999]).  Based on the foregoing, I find retaliatory removal from the general population and placement in segregation for nearly five months, in twenty-three-hour-per-day lockdown, is an adverse action sufficient to deter a person of ordinary firmness from complaining to the press.  *See Worrell*, 219 F.3d at 1212.

Finally, I must determine whether Defendants' adverse action was substantially motivated by Plaintiff's constitutionally protected conduct of complaining to the press.  *Id.*  "'Intent to inhibit speech . . . can be demonstrated either through direct or circumstantial evidence;'" although, it is only the rare occasion when proof of an official's retaliatory intent will be supported by direct evidence.  *McCook*, 44 Fed. App'x at 905 (quoting *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 [9th Cir. 1999]) (citing *Poole v. County of Otero*, 271 F.3d 955. 962 [10th Cir. 2001]); *Durant v. Indep. Sch. Dist. No. 16*, 990 F.2d 560, 564 (10th Cir. 1993) ("Allegations of retaliation are often supported only by circumstantial evidence.").  The Tenth Circuit "has set forth a test for examining the issue of intent in the context of a summary judgment motion based on qualified immunity."  *Worrell*, 44 Fed. App'x at 904.  "First, Defendants must make a *prima facie* showing of the objective reasonableness of the challenged conduct."  *Id.* (internal quotations and citations omitted).  If Defendants meet this burden, Plaintiff must then present evidence that "Defendants acted on the basis of a culpable subjective

state of mind." *Id.* at 905–06 (internal quotations omitted).  Here, Defendants have asserted the

reason for Plaintiff's segregation was to ensure Plaintiff's safety because he was previously a

corrections officer with the Colorado Department of Corrections and the Park County Jail houses

inmates of that Department.  (Defs.' Br., Statement of Undisputed Facts ¶ 26; *admitted at* Pl.'s

Resp., Resp. to Statement of Undisputed Facts ¶ 26.)  I find Defendant's have met their *prima*

*facie* burden.

Plaintiff, however, has presented circumstantial evidence of Defendants' culpable

subjective state of mind.  First, the facts on record show a temporal proximity between Plaintiff's

complaint to the press and his transfer to Park County Jail and ensuing segregation.  Plaintiff

complained to the press in late January of 2004, and he was transferred to Park County Jail and

placed in segregation in early February of 2004.  (*Id.*, Statement of Undisputed Facts ¶¶ 1, 24–25;

*admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶¶ 1, 24–25; Pl.'s Resp.,

Statement of Add'l Disputed Facts ¶ 5; *admitted at* Defs.' Reply, Resp. Concerning Disputed

Facts ¶ 5.)  Second, the facts suggest that Defendant's purported reason for placing Plaintiff in

segregation may be pretextual.  As Plaintiff explains, prior to his transfer to Park County Jail, he

was not in protective custody, but was instead incarcerated with the general population without

incident.  (Pl.'s Resp., Statement of Add'l Disputed Facts ¶ 4; *admitted at* Defs.' Reply, Resp.

Concerning Disputed Facts ¶ 4.)  Moreover, Plaintiff was previously incarcerated in the general

population for five months in Fremont County without incident.  (*Id.*, Statement of Add'l

Disputed Facts ¶ 3; *admitted at* Defs.' Reply, Resp. Concerning Disputed Facts ¶ 3.)  These

undisputed facts raise the question of why, after months of incarceration in the general population

-25-

without incident, Plaintiff required the "protection" of segregation.  (*See id.* at 25–26.)

Defendants have offered no explanation for this conundrum.  (*See* Defs.' Br.; Defs.' Reply.)

I note that the Tenth Circuit, in another case involving alleged retaliation against an inmate for exercising his First Amendment rights, warned "[w]here defendants' motives are seriously at issue, trial by affidavit is particularly inappropriate." *Smith*, 899 F.2d at 949.  With this consideration in mind, as well as the court's duty to make all reasonable inferences in favor of the non-moving party, I find that, although it is a close call, Plaintiff has alleged sufficient facts to support a finding of retaliatory motive.  That Plaintiff attempts to prove motive with circumstantial evidence is to be expected.  *See id.* (noting that plaintiff had "supported his allegations of retaliation by the only means available to him — circumstantial evidence of suspicious timing of his discipline, coincidental transfers of his witnesses and assistants, and an alleged pattern by defendants of blocking his access to legal material and assistance").  In fact, "[p]recisely because the ultimate fact of retaliation turns on defendants' state of mind, it is particularly difficult to establish by direct evidence." *Id.*

Although temporal proximity alone is likely insufficient to establish retaliatory motive, timing can act as circumstantial evidence of such motive.  *Poole*, 271 F.3d 961, *overruled in part on other grounds*, *Hartman v. Moore*, 647 U.S. 250 (2006); *see McDonald*, 610 F.2d at 18 (finding plaintiff "did aver a chronology of events which may be read as providing some support for an inference of retaliation"); *accord Harris*, 839 F.2d at 1238; *see also Worrell*, 44 Fed. App'x at 907 (finding temporal proximity between protected action and adverse action is insufficient, standing alone, to establish retaliatory motive).  In the instant case, the temporal

proximity between Plaintiff's exercise of his First Amendment rights and the adverse action, when considered along with Defendants' inability to proffer any explanation of why Plaintiff's status as an ex-corrections officer required him to be in segregation after February 3, 2004 but not prior to that time, are sufficient to permit a reasonable jury to infer that Plaintiff's segregation was motivated by retaliatory intent.  Thus, I find Plaintiff has met his burden under *Worrell's* three-part test and established a genuine issue of material fact as to whether his segregation was in retaliation for exercising his First Amendment rights.

### *(2)        Defendants Walker and Wegeners' Personal Involvement*

Defendants argue that even if Plaintiff's segregation was retaliatory, Plaintiff has failed to set forth specific facts showing the personal involvement of Defendants' Walker and Wegener in segregating Plaintiff, entitling Defendants to summary judgment on the conspiracy claim against them in their individual capacities.  (Defs.' Br. at 14.)  Plaintiff does not directly respond to Defendants argument.  (*See* Pl.'s Resp.)  This court finds it implicit that Plaintiff's transfer and segregation were pre-mediated decisions that involved several state-employed decisionmakers.  Nevertheless, excepting Plaintiff's single conclusory allegation that Defendants Walker and Chaffee County conspired with Defendants Wegener and Park County to segregate Plaintiff in retaliation for complaining to the press, Plaintiff fails to allege a single fact suggesting the Defendants Walker and Wegener *actually participated* in the decision to segregate Plaintiff.  (*See* Compl.; Pl.'s Resp.)  It is undisputed that: (1) Chaffee County Jail Administrator Nick Leva contacted Park County Jail Administrator Monte Gore to request Plaintiff's transfer; (2) the decision to place Plaintiff in protective custody was made by Park County Jail Administrator

Monte Gore in consultation with Sergeant Muldoon; and (3) Defendants Walker and Wegener *never* communicated with one another concerning Plaintiff. (Defs.' Br., Statement of Undisputed Facts ¶¶ 24, 27–28; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶¶ 24, 27–28.) Plaintiff has not even alleged that either Defendant Walker or Defendant Wegener was involved in the decisionmaking process, save pointing out that the Chaffee County Sheriff's Department arranged for Plaintiff to be transferred to Park County Jail. (*Id.*, Statement of Undisputed Facts ¶ 22; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 22.)

Presumably, then, Plaintiff intends to rest his claim against Defendants Walker and Wegener on the theory of supervisory liability. "To establish a supervisor's liability under [section] 1983 [Plaintiff] must show that 'an affirmative link exists between the [constitutional] deprivation and either the supervisor's 'personal participation, his exercise of control or direction, or his failure to supervise.'" *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1527 [10th Cir. 1988] [further internal quotations omitted]). Put simply, Plaintiff fails to make a single allegation that either Defendant Walker or Wegener: (1) personally participated in the decision to segregate Plaintiff; (2) exercised control or discretion over that decision; or (3) failed to supervise the individuals who made that decision.[9] (*See* Compl.; Pl.'s Resp.) Because Plaintiff has failed to present evidence of either Defendant Walker's or Defendant Wegener's direct involvement in, knowledge of, or acquiescence in the alleged retaliation, neither Defendant can be said to have violated a clearly established right. *See*

---

[9]Plaintiff does argue that Sheriff Walker failed to train his staff in the appropriate use of tasers, but makes no such argument regarding Plaintiff's segregation. (*See* Pl.'s Resp. at 24–26.)

*Woodward v. Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992) (upholding a district court's grant of summary judgment based on qualified immunity because the plaintiff "failed to present evidence of direct involvement by [defendants] in the sexual harassment or of knowledge and acquiescence by [defendants] of the sexual harassment"). Thus, Defendants are entitled to summary judgment on Plaintiff's conspiracy claim against Defendants Walker and Wegener in their individual capacity based on qualified immunity.

**3.     Conclusion**

Based on the foregoing it is therefore ORDERED as follows:

1.     Defendants' Motion for Summary Judgment (# 67) is GRANTED.

2.     Defendants' Motion to Dismiss (#19) is DENIED as moot.

3.     The clerk shall forthwith enter judgment in favor of Defendants and against Plaintiff, dismissing all claims with prejudice. Defendants may have their costs by filing a bill of costs within eleven days of the date of this order.

Dated this 14th day of March, 2007.

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge